CITY OF OAK RIDGE, Appellant,

v.

ROANE COUNTY, Appellee.

Supreme Court of Tennessee.

April 3, 1978.

William E. Lantrip, Luther M. Reed, Oak Ridge, for appellant.

Joe H. Walker, Harriman, for appellee.

## OPINION

FONES, Justice.

This suit was brought by Roane County to void an annexation ordinance adopted by City of Oak Ridge on September 17, 1975. The suit was filed April 14, 1976, well beyond thirty days after the operative date of the Oak Ridge ordinance.

By appropriate amendment Roane County asserted its standing to bring the action as an owner of property within the territory to be annexed, and its right to maintain the suit is not an issue before this Court. See *State v. Mayor of Morristown*, 222 Tenn. 21, 431 S.W.2d 827 (1968).

Roane County alleged that the ordinance was void because (1) Oak Ridge failed to give the notice required by T.C.A. § 6–309 and (2) that the plan of municipal services proposed for the territory to be annexed was not submitted to the Roane County Regional Planning Commission as required by T.C.A. § 6–309. The remaining allegations of the complaint, being clearly barred by the failure to bring the suit within thirty days after September 17, 1975, will not be recited here.

The issues decided by the lower court and brought here are (1) whether the courts have jurisdiction to entertain an annexation suit brought more than thirty days after the operative date of an annexation ordinance, challenging a municipality's alleged failure to give notice in accord with the requirements of T.C.A. § 6–309; and (2) whether the phrase "local planning commission" in T.C.A. § 6–309 means the planning commission of the municipality or the planning commission having jurisdiction over the territory to be annexed.

The Chancellor held that the thirty-day limitation applied only to suits brought on the issue of the reasonableness of the annexation ordinance as expressly authorized in T.C.A. § 6–310, and did not apply to a suit to void the ordinance for want of notice or failure to submit a plan of proposed municipal services to the proper local planning commission. He also held that the "local planning commission" as used in T.C.A. § 6–309 referred to that planning commission that had jurisdiction over the territory to be annexed, not the planning commission of the annexing municipality. We think the Chancellor was in error on both issues.

## I.

At the time the General Assembly enacted Chapter 113, Public Acts of 1955, there was no aspect of the legislative power to extend or contract municipal boundaries that was subject to review by the courts,

absent constitutional infirmity. In the early case of *McCallie v. Mayor of Chattanooga,* 40 Tenn. 317 (1859), this Court said:

"The extension of the corporate limits of Chattanooga was an exercise of governmental power of which the persons newly taken in could not be heard to complain; they had no voice in the matter, no power to resist, nor was any legal right of theirs infringed thereby." 40 Tenn. at 321.

In *Willett v. Corporation of Bellville,* 79 Tenn. 1 (1883), the Court said:

"The boundaries of a municipal corporation as fixed by the Legislature in the charter can not be changed except by the Legislature, or in the mode specifically prescribed by the Legislature." 79 Tenn. at 5.

In *Town of Oneida v. Pearson Hardwood Flooring Co.,* 169 Tenn. 449, 88 S.W.2d 998 (1935), Mr. Justice Cook, speaking for the Court expressed the rule as follows:

"The Legislature, clothed with power to create municipal corporations, may at will alter their boundaries without the consent of the municipality or the inhabitants of its territory. That is a political power which, in the absence of a constitutional restraint, is not open to review or hindrance by the courts." 169 Tenn. at 452, 88 S.W.2d at 999.

Perhaps the last case in which this rule was affirmed prior to the constitutional convention of 1953 was that of *Bell v. Town of Pulaski,* 182 Tenn. 136, 184 S.W.2d 384 (1945). An attack upon the constitutionality of a private act of 1941 enlarging the boundaries of Pulaski was subjected to constitutional attack upon several grounds. Chief Justice Green, writing for the Court, said:

"The unlimited power of the Legislature to change municipal boundaries has been declared by this Court so many times for so many years that there could have been no doubt in the legislative mind as to the validity of the Act of 1941 in that respect." 182 Tenn. at 141, 184 S.W.2d at 386.

As a part of the amendments added to Article 11, Section 9, Constitution of Tennessee in 1953, the following sentence appears:

"The General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered."

Responding to that amendment, the General Assembly enacted Chapter 113, Public Acts of 1955, providing two methods of altering municipal boundaries, the ordinance method as provided in T.C.A. § 6–309 and the referendum method codified as T.C.A. § 6–311 and § 6–312. In delegating to municipalities the political power to annex by ordinance, the Legislature for the first time in our judicial history granted jurisdiction to the courts to entertain a contest of a municipality's annexation ordinance. That portion of Chapter 113 is codified as T.C.A. § 6–310.

 Within the four corners of that statute lies the entire jurisdiction and authority of the Courts to review the actions of municipalities in enacting annexation ordinances. We reach that conclusion both because of the state of the law at the time it was adopted and from a careful reading and analysis of the statute itself.

The provisions of T.C.A. § 6–310 that are relevant here (1) authorize a suit by any owner of property in the territory to be annexed, if brought prior to the operative date of the annexation ordinance (thirty days after passage); (2) limit the issue that can be entertained by the court to whether the proposed annexation is reasonable, in consideration of the health, safety and welfare of the citizens and property owners of the territory proposed to be annexed and of the municipality as a whole; (3) authorize the trial court to vacate the ordinance if it finds it unreasonable; (4) declare that the ordinance becomes operative thirty-one days after judgment entered, if found reasonable by the trial court, unless appealed; (5) authorize the Court to vacate the ordinance if it is found invalid on appeal; (6) provided that, if found valid, "it shall become operative forthwith by court order and shall not be subject to contest or attack in legal or equitable proceeding for any cause or reason, the judgment of the appellate court being final."

The General Assembly is presumed to have known that the political power it was delegating to municipal corporations was not subject to review by the courts when Chapter 113, Public Acts 1955 and subsequent amendments thereto were enacted. See *Hargrove v. Newsome,* 225 Tenn. 462, 470 S.W.2d 348 (1971); *McKinney v. Hardwick Clothes, Inc.,* 217 Tenn. 457, 398 S.W.2d 265 (1966).

Bearing in mind that no right to review the extension of municipal boundaries existed prior to Chapter 113, Public Acts 1955, absent constitutional infirmities, the rights that now exist are limited to those granted in Section 2(b) of that act, codified in T.C.A. § 6–310, grammatical paragraphs one, three, and four.[1]

The statute expressly authorizes a court contest on only one ground—whether the annexation is reasonably necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole. The statute expressly authorizes the courts, trial and appellate, to "vacate" an annexation ordinance upon a finding of unreasonableness. That authorization is exclusive. The courts are not expressly or impliedly authorized to void a municipal ordinance for failure of the mu-

---

1. Subsequent amendments of T.C.A. § 6–310 have added grammatical paragraphs two, five, and six. Grammatical paragraph two puts the burden of proof on municipalities. Grammatical paragraph five involves industrial plant development, if situated in the affected territory—neither of these are relevant to the issues in this case. The summary of the statute in the preceding paragraph of this opinion is of the original grammatical paragraphs, now one, three, and four, which have remained unchanged.

nicipality to give notice, hold a public hearing, or submit a plan of services to the local planning commission.

It is apparent, however, that in a timely-filed suit, a city would be unable to carry the burden of proving that the annexation was reasonably necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole without a public hearing after the required notice.

Our conclusions with respect to the exclusiveness of the statute are in accord with the decision in *City of Gallatin v. City of Hendersonville,* 510 S.W.2d 507 (Tenn.1974), where it was held that standing to bring a suit contesting an annexation ordinance must be found in T.C.A. § 6–310. Gallatin brought suit alleging that, as the larger of the two cities, its annexation ordinance was entitled to priority over Hendersonville's, pursuant to T.C.A. § 6–317. Hendersonville filed a cross-action alleging that Gallatin had not complied with T.C.A. § 6–309 or its own charter in adopting an annexation ordinance; that it had not adopted a plan of services or submitted it to its planning commission as required by said statute; and that T.C.A. § 6–317 was not applicable because it had annexed the territory in question before Gallatin's attempted annexation.

Chief Justice Dyer, writing for the Court said:

"Under the common law neither Hendersonville nor Gallatin had any authority to annex this territory by ordinance. The authority of both cities is contained solely in our statutes and the rights of Hendersonville to contest such issues will have to be found in our statutes." 510 S.W.2d at 509.

The Court found that Hendersonville was not an owner of property within the meaning of the statute and was without standing to contest the validity of Gallatin's annexing ordinance.

In *Brent v. Town of Greeneville,* 203 Tenn. 60, 309 S.W.2d 121 (1957), the Court held the filing of suit within thirty days after the operative date of an annexation ordinance to be a condition precedent, essential in order to confer jurisdiction.

There the Court was faced with the question of whether or not T.C.A. § 28–106 gave the defendants the right to commence a new action to test the validity of an annexation ordinance within one year of the date of a voluntary nonsuit of a case timely-filed under T.C.A. § 6–310.

Mr. Justice Prewitt, writing for the Court, distinguished the thirty-day limitation in T.C.A. § 6–310 from general statutes of limitation, thus:

"[T]he different statutes of limitation limit the time within which the remedy for a violation of an existing right must be exercised, and if the remedy is not pursued in time the statutes of limitation bar the remedy, and if pursued in time, but dismissed for any reason not concluding the right of action the saving statute comes into play and gives the litigant additional time within which to pursue his remedy.

. . . . .

"The defendants, in this cause, were given a right by the statute, not a remedy, and were further given a limited time in which to exercise the right." 203 Tenn. at 63, 65, 309 S.W.2d at 122.

We hold that the right to bring a suit pursuant to the authority of T.C.A. § 6–310 to review any issue arising out of the adoption of an annexation ordinance authorized in T.C.A. § 6–309 expires thirty days after the operative date of the ordinance, the courts have no jurisdiction of such suits thereafter.

II.

The requirements of T.C.A. § 6–309 that a plan of service be submitted to the "local planning commission" is ambiguous. On its face, it could refer to either the planning commission of the annexing municipality or

the planning commission having jurisdiction over the territory to be annexed.

■ Where the interpretation of an ambiguous statute is before the courts, the debates in the General Assembly may be resorted to in seeking legislative intent. See *Southern Railway v. Fowler,* 497 S.W.2d 891 (Tenn.1973).

The requirement of submission to the local planning commission was added to T.C.A. § 6–309 by Chapter 320, Public Acts of 1961. When the bill was submitted for final reading in the Tennessee House of Representatives, the paragraph at issue read as follows:

"Provided, further, that before any such plan of service shall be adopted, it must have been submitted to the local planning commission for study and a written report, to be rendered within ninety (90) days after such submission, unless by resolution of the governing body a longer period is allowed. In the event that there is no local planning commission, the referral by the local governing body shall be to the State Planning Commission."

The bill was changed to its present form by an amendment passed that day. In explaining the purpose of the amendment, Representative Barry, the bill's sponsor, said the following:

"The original bill provided that the plan of services as prepared by the municipal authorities had to be submitted to the planning commission *of the particular city,* but in the event that no such planning commission existed, it should then be submitted to the State Planning Commission for their approval or rejection.

"It is quite obvious, I think, to the House, that most of the cities and municipalities which do not have planning commissions are the smaller ones, and we feel that it would impose an unjust burden on them to delay their annexation procedures until such time as the various and scattered members of the State Planning Commission can be brought together for consideration of any plan that they might submit." (Emphasis added.)

■ Representative Barry's comments clearly show that the "local planning commission" to which the plan of services must be submitted is the planning commission of the annexing municipality. The bill was passed overwhelmingly by the Tennessee House of Representatives shortly after Representative Barry's remarks above-quoted. In the records available to us, there is nothing to indicate that the legislature, or any member of it, placed a contradictory construction on the word "local." We hold that "local planning commission" refers to the planning agency of the annexing municipality.

The decree of the trial court is reversed and this suit is dismissed. Costs are adjudged against Roane County.

HENRY, C. J., and COOPER, BROCK and HARBISON, JJ., concur.