IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2006 Session

# HIGHWOODS PROPERTIES, INC., ET AL. v. CITY OF MEMPHIS, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-05-2346-3     D. J. Alissandratos, Chancellor**

**No. W2006-00732-COA-R3-CV - Filed December 14, 2006**

The trial court dismissed Plaintiffs' cause of action as time-barred under Tennessee Code Annotated §§ 6-51-102(a)(1) & 103.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Colleen Denise Hitch and John S. Golwen, Memphis, Tennessee, for the Appellants, Highwoods Properties, Inc., Highwoods Realty Limited Partnership, Highwoods/Tennessee Holdings, LP, and AP Southeast Portfolio Partners LP.

Jonathan C. Hancock, Sara L. Hall and Ross Emerson Webster, for the Appellees, City of Memphis, Memphis City Council and its members, E.C. Jones, Brent Taylor, Tajuan Stout Mitchell, Dedrick Brittenum, Jr., Carol Chumney, Edmund Ford, Barbara Swearengen Holt, Joe Brown, Rickey W. Peete, Myron Lowery, Scott McCormick , Tom Marshall, Jacks Sammons, and Dr. W. W. Herenton.

## OPINION

This appeal arises from Plaintiffs' *quo warranto* action contesting annexation of property within the Southwind/Wyndyke area by the City of Memphis.  The trial court dismissed  Plaintiffs' action as time-barred under Tennessee Code Annotated §§ 6-52-102(a)(1) & 103 where it was filed eight years after passage of the ordinance annexing the area but during pendency of a timely-filed consolidated action.  On appeal, Plaintiffs assert the trial court erred by dismissing their action as time-barred.  We affirm.

## Background

The facts relevant to our review of this case are undisputed. On November 4, 1997, the Memphis City Council passed Ordinance No. 4513 ("the ordinance") annexing the Southwind/Wyndyke area designated as "Study Area No. 42." Fewer than thirty days later, on December 3, 1997, three property owners within the annexation area filed *quo warranto* actions in the Shelby County Chancery Court challenging the reasonableness of the ordinance. The trial court consolidated the actions ("the consolidated actions") pursuant to Tennessee Code Annotated § 6-51-103(d).

On December 29, 2005, eight years after the ordinance was passed but while the consolidated action was still pending, Highwoods Properties, Inc., on behalf of itself and other similarly situated property owners, filed a *quo warranto* action in the Chancery Court of Shelby County against the City of Memphis, the Memphis City Council and its Members, and Dr. W. W. Herenton, in his capacity as Mayor (hereinafter, collectively, "Memphis") contesting the ordinance pursuant to Tennessee Code Annotated § 6-51-101, *et seq.* In its complaint, Highwoods Properties alleged that a potential consent judgment among the parties to the pending consolidated action included terms that were detrimental to Highwoods Property and "inconsistent" with the ordinance. Highwoods Properties contemporaneously filed a motion to consolidate its action with the pending consolidated action pursuant to Tennessee Code Annotated § 6-51-103(d). On February 1, 2006, Highwoods Property together with Highwoods Realty Limited Partnership, Highwoods/Tennessee Holdings, LP, and AP Southeast Portfolio Partners LP (hereinafter, collectively, "Highwoods") filed an amended but substantively identical complaint.

On January 24, 2006, Memphis moved to dismiss Highwoods' action. In its motion, Memphis asserted Highwoods' action was time-barred under Tennessee Code Annotated §§ 6-51-102 & 103 where the action was not filed within thirty days of final passage of the ordinance. It further asserted that Highwoods was not an "aggrieved owner of property" as defined by section 6-51-101, *et seq.*, and that the action could not be maintained against the Memphis City Council, its individual Members, or the Mayor.

The trial court heard Highwoods' motion to consolidate and Memphis' motion to dismiss on February 17, 2006. The trial court determined Highwoods' action was time-barred under Tennessee Code Annotated §§ 6-51-101 *et seq.*, and *State ex rel. Bastnagel v. City of Memphis*, 457 S.W.2d 532 (Tenn. 1970), and accordingly dismissed it. The trial court entered final judgment in the matter on March 3, 2006, and Highwoods filed a timely notice of appeal to this Court on March 29, 2006.

## Issues Presented

The sole issue presented by Highwoods for our review is whether the trial court erred in holding that Highwoods' action was time-barred under Tennessee law. Memphis presents the additional issue of whether entry of a consent final judgment in the consolidated action renders

Highwoods' action moot in light of the consolidation requirement contained in Tennessee Code Annotated § 6-51-103(d).

## *Standard of Review*

The issue presented on appeal requires us to construe the limitations provisions contained in Tennessee Code Annotated §§ 6-51-102 & 103.  This is a question of law which we review *de novo* with no presumption of correctness afforded to the trial court.  *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005).  We likewise review the trial court's application of law to the facts *de novo*, with no presumption of correctness.  *State v. Thacker*, 164 S.W.3d 208, 248 (Tenn. 2005).
The court's primary purpose in construing a statute is to determine and effectuate the intent of the General Assembly as expressed by the statute as a whole and in light of its general purpose.  *State ex rel. Bastnagel v. City of Memphis*, 457 S.W.2d 532, 518-19 (Tenn. 1970).

## *Analysis*

We turn first to Memphis' contention that the issue raised on appeal is moot where the pending consolidated action has been settled by consent order.  Memphis' argument, as we understand it, is that because Tennessee Code Annotated § 6-5-103(d) requires the trial court to consolidate actions challenging an annexation ordinance pursuant to the chapter, and because Highwoods' action was not consolidated and the pending timely-filed consolidated action has been settled by agreed order, Highwoods' appeal of the trial court's determination is moot.

Highwoods, on the other hand, asserts the action is not moot because "as long as the Court concludes that the Highwoods' [a]ction was timely filed, any settlement of the [c]onsolidated [a]ctions would be void as a violation of the statutory requirement that all *quo warranto* actions challenging the validity of a single annexation ordinance be consolidated."  Highwoods also asserts that the matter is not "finally resolved" where a third party continues to prosecute its appeal of the trial court's denial of its motion to intervene in the consolidated actions.  Highwoods' argument, as we understand it, is that in order to determine whether its appeal is moot we must first determine whether the trial court erred in determining the action was time-barred.  Highwoods further asserts, in the alternative, that if the action is moot it falls within the "issue of great public importance" exception to the mootness doctrine.

It is well settled that in order to invoke the jurisdiction of the courts, there must be a genuine and live controversy between the parties which necessitates adjudication of present rights by the court.  *Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977).  This controversy must remain live throughout the course of litigation, including the appeal process.  *Id.*  A moot case is one in which the court determines it is no longer necessary as a means to provide the relief to which a party is entitled.  *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 617 (Tenn. Ct. App.1999).  In the absence of exceptional circumstances justifying an exception to the mootness doctrine, if a cause of action loses its character as a live controversy, it will be dismissed as moot.  *Id*. at 955; *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994).  The most common exceptions to the

mootness doctrine are actions affecting the administration of justice, actions involving issues capable of repetition yet evading judicial review, and actions involving issues of great public importance. *Office of the Atty. Gen. v. Tenn. Regulatory Auth.*, No. M2003-01363-COA-R12-CV, 2005 WL 3193684, at *5 (Tenn. Ct. App. Nov. 29, 2005) (*no perm. app. filed*) (citing *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 339-40(Tenn. Ct. App., 2005)(citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 1184 (1982))).

We agree with Highwoods that this issue is not moot. The issue on appeal is not whether the trial court erred in denying Highwoods' motion to consolidate. This issue arguably would be moot. Rather, Highwoods asserts that the trial court erred in its application of sections 6-51-102 & 103 in light of this Court's holding in *State ex rel. Trivett v. City of McMinnville*, No. M2003-02623-COA-R3-CV, 2005 WL 147762 (Tenn. Ct. App. Jan. 24, 2005) (*no perm. app. filed*), and that, if the trial court erred, the consent order entered in the consolidated actions is null and ineffective. Thus, there remains a live controversy between the parties which necessitates adjudication by the court.

Moreover, as Highwoods asserts, the "issue of great public importance"exception to the mootness doctrine would apply in this case. We take judicial notice of the frequency of lawsuits contesting annexation under sections 6-51-102 & 103, and of the settlement agreements entered into between the parties during the course of litigation. Additionally, in its November 9, 2006, motion to consider post-judgment facts,[1] Memphis references the "important policy concerns" which are "clearly demonstrate[d]" in this appeal. Therefore, we perceive Memphis as having conceded that, assuming the current controversy is moot, this issue nevertheless falls into the "issue of great public importance" exception.

We next turn to Highwoods' assertion that the trial court erred in determining its action was time-barred under Tennessee Code Annotated §§ 6-51-102 & 103. Section 6-51-102(a)(1) provides:

> A municipality, when petitioned by a majority of the residents and property owners of the affected territory, or upon its own initiative when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered, after notice and public hearing, by ordinance, may extend its corporate limits by annexation of such territory adjoining its existing boundaries as may be deemed necessary for the welfare of the residents and property owners of the affected territory as well as the municipality as a whole; provided, that the ordinance shall not become operative until thirty (30) days after final passage thereof. During this thirty-day period, the municipality shall notify the county mayor in whose county the territory being annexed is located that territory located in the unincorporated part of the county is being annexed by the municipality. The notification shall include a copy of the annexation ordinance and a map of the area being annexed.

---

[1]Motion denied November 28, 2006.

-4-

Tennessee Code Annotated § 6-51-102(a)(1)(2005). Section 6-51-103 provides, in pertinent part:

> (a)(1)(A) Any aggrieved owner of property that borders or lies within territory that is the subject of an annexation ordinance prior to the operative date thereof, may file a suit in the nature of a quo warranto proceeding in accordance with this part, § 6-51-301 and title 29, chapter 35 to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law. Notwithstanding the provisions of any other section in this chapter, for purposes of this section, an "aggrieved owner of property" does not include any municipality or public corporation created and defined under title 7, chapter 82 that owns property bordering or lying within the territory that is the subject of an annexation ordinance requested by the remaining property owner or owners of the territory and whose property and services are to be allocated and conveyed in accordance with § 6-51-111, § 6-51-112 or § 6-51-301, or any contractual arrangement otherwise providing for such allocation and conveyance.
>
> . . . .
>
> (d) If more than one (1) suit is filed, all of them shall be consolidated and tried as one (1) in the first court of appropriate jurisdiction in which suit is filed. Suit or suits shall be tried on an issue to be made up there, and the question shall be whether the proposed annexation is or is not unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality. Should the court find the ordinance to be unreasonable, or to have been done by exercise of powers not conferred by law, an order shall be issued vacating the ordinance and the municipality shall be prohibited from annexing, pursuant to the authority of § 6-51-102, any part of the territory proposed for annexation by such vacated ordinance for a period of at least twenty-four (24) months following the date of such order. In the absence of such finding, an order shall be issued sustaining the validity of such ordinance, which shall then become operative thirty-one (31) days after judgment is entered unless an abrogating appeal has been taken therefrom.

Tennessee Code Annotated § 6-51-103(a)(1)(A) & (d)(2005).

Highwoods submits that, under the plain language of the statute, because the consolidated action was pending when Highwoods filed its suit, the ordinance had not become "operative" and, accordingly, Highwoods' action was not time barred. Highwoods cites this Court's holding in *Trivett v. City of McMinnville* for the proposition that the Supreme Court's holding in *State ex rel. Bastnagel v. City of Memphis*, 457 S.W.2d 532 (Tenn. 1970), "did not stand for the proposition that a thirty day statute of limitations always exists for *quo warranto* actions . . . ." Highwoods submits that in *Trivett* we held that "*Bastnagel* stands for the proposition that there is an inherent limit in the statute regarding timing - - *quo warranto* actions are barred after an annexation ordinance becomes

'operative.'" Memphis, on the other hand, contends that the *Bastnagel* court unequivocally held that a thirty-day limitation of actions period is imposed by Tennessee Code Annotated §§ 6-51-102 & 103.

The issues raised in this case require us to construe sections 6-51-102 & 103 in light of *Bastnagel* and *Trivett,* and together with section 6-58-108. When construing a statute, the court seeks to ascertain and effectuate the intent of the General Assembly. A statute must be construed in its entirety, without undue restriction or expansion. When the statutory language is clear and unambiguous, legislative intent is derived from the plain and ordinary meaning of the words chosen by the General Assembly. When the statutory language is ambiguous, legislative intent must be derived from the entire statutory scheme, and the court must consider the purpose, object, and scope of the statute. Statutes which have a common subject or purpose may be read *in pari materia* and construed together. *State v. Collins*, 166 S.W.3d 721, 725-26 (Tenn. 2005)(citations omitted). With this in mind, we turn to *Bastnagel* and *Trivett* as they apply to the case at bar.

Like Highwoods, the appellants in *Bastnagel* asserted that the plain meaning of the statute[2] permitted the filing of an action contesting annexation at any time prior to the "operative date" of the ordinance. According to this argument, the "operative date" was the date the ordinance in fact became operative, or the date the annexation was effective. *Bastnagel*, 457 S.W.2d at 533. The *Bastnagel* court framed the issue as follows:

> Under the language of T.C.A. s 6-309, italicized above, it is clear the Legislature intended to suspend the operation of the ordinance for thirty days after final passage and under T.C.A. s 6-310, any suit filed within this thirty days would be timely filed. The issue here is whether it was the intent of the Legislature by this language in T.C.A. s 6-309, to mean that in the event no suit was filed within this thirty days the ordinance would become 'operative' in the sense no suit could be filed thereafter under T.C.A. s 6- 310; or was it the intent of the Legislature in the use of this word 'operative' to mean the actual date of annexation even though said date is later than thirty days after final passage of the ordinance.

*Id.* at 533-34. The court noted that the authority to alter municipal boundaries is within the plenary power of the Legislature and that, absent any constitutional constraint, such a decision is not "open for review by the courts." *Id.* at 534. The Legislature, moreover, delegated this authority, subject to certain restrictions, to the municipalities. *Id.* The *Bastnagel* court observed that the "Legislature then could have delegated to the municipalities the authority to annex with no right of judicial review absent constitutional restraint. Appellants by T. C. A. § 6-310 were given a right, not a remedy." *Id.*

Viewing the statute as a whole, and bearing in mind that the Legislature provided aggrieved landowners a right to judicial review where none would otherwise exist, the court reasoned that

---

[2]The nearly identical statutes were then codified as T.C.A. § 6-309 and § 6-310.

statute was written to provide landowners a reasonable time to pursue judicial review. *Id.* at 535. The *Bastnagel* court held that the statute's mandate that an ordinance may not become operative until thirty days after final passage provided a reasonable time in which an aggrieved landowner might seek judicial review, and that the period in which review could be sought was limited to thirty days. *Id.*

Thus, the *Bastnagel* court addressed and rejected Appellants' assertion that the "plain language" of the statute does not impose a limitations period of thirty days. Moreover, the General Assembly has not altered the statute in the thirty-six years following *Bastnagel.* In 1998, however, the General Assembly added section 6-58-108 to the Code. Section 6-58-108 provides counties the right to contest annexation within ninety days of the passage of an annexation ordinance. Tennessee Code Annotated § 6-58-108(a)(2)(2005). The section additionally provides:

> If the county or any other aggrieved owner of property does not contest the annexation ordinance under § 6-51-103 within ninety (90) days of final passage of the annexation ordinance, the ordinance shall become operative ninety (90) days after final passage thereof.

Tennessee Code Annotated 6-58-108(b)(4)(2005). The effect of this 1998 statute on the earlier code provision was considered by this Court in *Trivett*.

In *Trivett*, plaintiff landowners petitioned Warren County ("the County") to contest annexation of areas within the county by McMinnville pursuant to section 6-58-108. *Trivett v. McMinnville*, No. M2003-02623-COA-R3-CV, 2005 WL 147762 (Tenn. Ct. App. Jan. 24, 2005) (*no perm. app. filed*). The County Commission passed three resolutions to contest the annexation ordinances. *Id.* at *1. These resolutions were passed within sixty days of passage of the ordinances as required by section 6-58-108(a)(1). *Id.* However, the County failed to file its action against McMinnville within the ninety-days limitations period. *Id.* Accordingly, the trial court dismissed the County's action as time-barred. *Id.*

In the meantime, while awaiting action by the County, the individual plaintiff landowners filed actions pursuant to section 6-51-103 within ninety days of the passage of the annexation ordinances. *Id.* The trial court found section 6-51-103 and section 6-58-108 to be "mutually exclusive," and dismissed plaintiffs' actions as time-barred under *Bastnagel* where they were not filed within thirty days of the final passage of the annexation ordinance. *Id.* at *2. This Court reversed, holding the sections are not mutually exclusive. *Id.* at *1. We held that, where the County had passed timely resolutions pursuant to section 6-58-108, the ordinance could not have become operative until ninety days after final passage because, under the statute, the county had ninety days in which to bring its action. *Id.* at *7. We accordingly held that plaintiffs had timely-filed their section 6-51-103 actions where they were filed within the ninety-days provided by section 6-58-108. *Id.* *9.

In *Trivett*, we noted that sections 6-51-103 and section 6-58-108 are "dueling" sections. *Id.* at *5. Indeed, section 6-58-108(b)(4) provides:

> If the county or any other aggrieved owner of property does not contest the annexation ordinance under § 6-51-103 within ninety (90) days of final passage of the annexation ordinance, the ordinance shall become operative ninety (90) days after final passage thereof.

We noted in *Trivett*,

> [w]hat is not as clear is whether such a petition by the property owner to the county is essential to increase the period of limitation from 30 days to 90 days. Though not entirely consistent with the foregoing, the newer statute also provides that, "If the county or any other aggrieved owner of property does not contest the annexation ordinance under § 6-51-103 [the older statute] within ninety (90) days of final passage of the annexation ordinance, the ordinance shall become operative ninety (90) days after final passage thereof." Tenn. Code Ann. § 6-58-108(b)(4). To bring an action under § 6-51-103 [the older statute] does not require petitioning the county to intervene. While these provisions are somewhat inconsistent and indeed confusing, it is not necessary that we wrestle with that uncertainty to resolve the dispute presented by the parties.

*Id.* at *6 n.8.

It is also unnecessary for us to wrestle with the question of whether section 6-58-108 expands the thirty-day limitation period provided by section 6-51-103 to ninety days in this case. Highwoods filed its action eight years after passage of the annexation ordinance at issue here, well beyond a reasonable limitation period envisioned by either statute.

Highwoods, does not predicate its argument on an assertion that section 6-58-108 legislatively amends *Bastnagel* by expanding the limitations period. Rather, Highwoods asserts that this Court's holding in *Trivett* stands for the proposition that the "key factor" in determining whether its action was time-barred is whether the annexation ordinance had become "operative." It contends that, under section 6-51-103(d), an ordinance does not become operative until thirty-one days after judgment is entered in an action brought pursuant to section 6-51-103(a). It argues that because the consolidated actions were pending when Highwoods filed its action, the ordinance was not "operative" and its case was timely-filed. Highwoods' argument, as we perceive it, is that an action is timely-filed where it is filed before the ordinance becomes "operative." Further, where an action is pending under section 6-51-103, under subsection (d) the ordinance does not become "operative" until thirty-one days after final judgment or, if an appeal is pending, until resolution on appeal.

We do not agree that *Trivett* supports this proposition. On the contrary, the interpretation urged by Highwoods, followed to its logical extreme, would allow a string of plaintiffs to file

individual lawsuits at any time before expiration of thirty-one days following judgment in the previous case. The ordinance would never become "operative." Although a novel strategy to prevent operation of annexation ordinances, we doubt this was the result intended by the Legislature. Rather, by requiring a consolidated *quo warranto* proceeding, the Legislature sought to avoid a succession of numerous lawsuits by individual parties. *State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948, 952 (Tenn. 1998).

Despite Highwoods' rather elaborate construction of *Trivett*, the issue raised in this case is whether "operative" as used in section 6-51-103 refers to the date on which the annexation actually takes place, or whether the "operative" date for purposes of the section is thirty days after final passage of the ordinance. The court unambiguously answered this question in *Bastnagel*. The "operative" date for purposes of pursuing a cause of action under section 6-51-103 is thirty days after final passage of the annexation ordinance. *Bastnagel*, 457 S.W.2d at 535.

### *Holding*

Clearly, the "operation," or effective date, of an annexation ordinance is held in abeyance pending litigation of timely-filed lawsuits under Tennessee Code Annotated section 6-51-103 or section 6-58-108. Lawsuits timely-filed under section 6-51-103 must be consolidated pursuant to section 6-51-103(d). However, a court has no jurisdiction to consolidate an untimely-filed action with a timely-filed action. *See City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 898 (Tenn. 1978)(holding: savings statute not applicable to actions brought under the section where aggrieved landowners were given a limited time to exercise their right to judicial review and court lost jurisdiction upon expiration of the thirty-day time). Under *Bastnagel*, the limitations of action period is thirty days following final passage of the annexation ordinance. Arguably, section 6-58-108, enacted in 1998, legislatively modifies the limitations period established in *Bastnagel* in 1970 to ninety days. Although the conflict between the two statutes requires resolution, that question is not currently before this Court. Highwoods clearly did not file its action within ninety days of final passage of the annexation ordinance.

In light of the foregoing, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellants, Highwoods Properties, Inc., Highwoods Realty Limited Partnership, Highwoods/Tennessee Holdings, LP, and AP Southeast Portfolio Partners LP, and their sureties, for which execution may issue if necessary.

                                    _____

                                    DAVID R. FARMER, JUDGE