

# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 17, 2017 Session

## JOSEPH O'SHIELDS, ET AL. v. CITY OF MEMPHIS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-12-1233-1  Walter L. Evans, Chancellor**

_____

### No. W2016-01172-COA-R3-CV

_____

The issue on appeal in this case is whether the City of Memphis unlawfully assessed a tax on real property located in a newly annexed area of the city in 2012.  The plaintiffs are property owners in the annexed area who argue that the city had no authority to assess property taxes in the area for 2012 because its annexation of the area took effect after January 1, 2012.  The trial court concluded that the tax was lawful because the City's annexation of the area took effect before January 1, 2012 and granted summary judgment in favor of the defendants.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Richard L. Winchester, Jr., Memphis, Tennessee, for the appellants, Joseph O'Shields, Tommie Isom, Warren Riggs, Roy Fisk, and Kenneth Netherton.

Allan J. Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellees, City of Memphis and Marie Kirk Owens.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On November 20, 2001, the Memphis City Council passed an ordinance to extend the boundaries of the City of Memphis (the "City") by annexing the South Cordova area effective December 31, 2001.  On December 18, 2001, Gene B. Cochran and other residents of South Cordova filed a *quo warranto* action to contest the validity of the annexation ordinance ("*Cochran I*").  No other *quo warranto* actions contesting the

validity of the annexation ordinance were filed within 30 days of the passing of the ordinance. On April 20, 2011, the trial court entered an order dismissing *Cochran I* due to the plaintiffs' failure to prosecute the case. The *Cochran I* plaintiffs filed a post-judgment motion to set aside the dismissal, and the trial court entered a final order denying the post-judgment motion on June 28, 2011. No appeal was taken from the dismissal of *Cochran I*.

On July 5, 2011, the *Cochran I* plaintiffs filed a second *quo warranto* action to contest the annexation ordinance ("*Cochran II*"). On May 16, 2012, the trial court entered an order dismissing *Cochran II* for failure to state a claim upon which relief can be granted. The *Cochran II* plaintiffs appealed, and this Court affirmed the dismissal. *See Cochran v. City of Memphis*, No. W2012-01346-COA-R3-CV, 2013 WL 1122803 (Tenn. Ct. App. Mar. 19, 2013).

The present case was initiated on July 31, 2012 when Joseph O'Shields and other owners of property in South Cordova, individually and on behalf of all others similarly situated, filed a complaint against the City and Marie Kirk Owens, in her capacity as treasurer, seeking a refund of property taxes collected from property owner's in the annexed area by the City in 2012 as well as other costs and fees.[1] The plaintiffs asserted that the City had no legal authority to assess or collect taxes on real property located in South Cordova in 2012 because the area was not within the City's limits on January 1, 2012. *See* Tenn. Code Ann. § 67-5-504(a) ("All assessments of real property . . . shall be made annually and as of January 1 for the year to which the assessment applies[.]"). The defendants filed a motion to dismiss, in which they argued that the taxes were lawful because the City's annexation of South Cordova took effect 31 days after the entry of the final judgment in *Cochran I* on June 28, 2011.

Following a period of discovery, both parties filed motions for summary judgment. In support of their motion, the defendants submitted portions of the record from *Cochran I* demonstrating that a final judgment was entered in that case on June 28, 2011, and no appeal was taken therefrom. The defendants argued that, by statute, the annexation ordinance took effect 31 days later, on July 29, 2011. *See* Tenn. Code Ann. § 6-51-103(d)(1). In support of their motion, the plaintiffs submitted evidence intending to demonstrate that the annexation ordinance took effect, at the earliest, on July 1, 2012. According to the evidence introduced by the plaintiffs, residents of South Cordova paid

---

[1] Although the plaintiffs request a refund of property taxes collected by the City in 2012, their complaint states only that the City of Memphis has expressed its intent to collect 2012 property taxes from the residents of South Cordova. As such, it is unclear whether the plaintiffs had actually paid any 2012 property taxes to the City of Memphis at the time the complaint was filed.

monthly fire protection fees to Shelby County through June 2012. The City began providing primary emergency and waste removal services to the South Cordova area on July 1, 2012. Around the same time, the residents of South Cordova received a letter, dated June 29, 2012, from the City's mayor that stated in part, "As the Mayor of Memphis, let me be the first to officially welcome you and your family to the great City of Memphis, Tennessee." Enclosed with the letter, the residents of South Cordova received a document titled, "South Cordova Annexation Frequently Asked Questions." In part, the document stated:

**Q: When does this annexation become official?**

**A:** The Memphis City Council officially annexed South Cordova in October 2001. Although action was delayed because of ongoing litigation through May 15, 2012, the Courts ruled that the annexation is effective as of January 1, 2012.

**Q: I recall some mention of annexation some years ago, but why am I just hearing about our community being officially annexed now?**

**A:** The 2001 annexation was delayed by the lawsuit filed by the residents of the area. This original lawsuit was dismissed by the courts on June 28, 2011 and annexation was official as of July 30, 2011 when the plaintiffs did not file an appeal within the 30 days allowed. By law, annexation was to be fully implemented starting January 1, 2012. However, a second lawsuit was filed by the same residents of the area on July 5, 2011. This second lawsuit was not decided until May 15, 2012. Because of the delay caused by these lawsuits, July 1, 2012 is now the official start date for operations.

**Q: Can't this be put off until next year?**

**A:** The City annexed the South Cordova area on December 4, 2001. The residents of the area contested the annexation by a timely filed lawsuit. That lawsuit was finally concluded June 28, 2011 and pursuant to Tennessee law, South Cordova residents are citizens of Memphis. Also, pursuant to Tennessee law, properties within the area became subject to City of Memphis taxes on January 1, 2012. The tax was assessed that date but will be collected in and used for the fiscal year beginning July 1, 2012, the new fiscal year.

. . .

**Q: When will I be taxed by the City of Memphis?**

**A:** Residents and businesses in the annexed area will receive a City of Memphis property tax bill for the full 2012 tax year. Property tax bills for 2012 will be mailed to property owners by the third week of July 2012. If you have questions regarding your tax bill please contact the City Treasurer's Office . . . or call the Mayor's Citizen's Service Center[.]

Following a hearing, the trial court entered an order granting summary judgment in favor of the defendants. In an incorporated statement of its findings and conclusions, the trial court explained that, based on the undisputed evidence submitted by the defendants, the annexation became effective on July 29, 2011 (31 days after a final judgment was entered in *Cochran I*), and the City's assessment of 2012 property taxes in South Cordova was lawful. Thereafter, the plaintiffs filed a post-judgment motion to alter or amend. The trial court denied the motion, and the plaintiffs timely filed a notice of appeal to this Court.

### ISSUES

The plaintiffs raise the following issues on appeal, restated from their brief:

1. Whether the trial court erred in granting summary judgment in favor of the defendants.

2. Whether the trial court erred in adopting, verbatim, findings and conclusions submitted by the defendants prior to the entry of its ruling.

### STANDARD OF REVIEW

This is an appeal from the trial court's grant of summary judgment to the defendants. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Id.* The following standards guide our de novo review:

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264-65 (Tenn. 2015) (judicially adopting a summary judgment standard parallel to the statutory standard set forth in Tennessee Code Annotated section 20-16-101); *see also Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 39-40 (Tenn. 2016) (explaining that the *Rye* standard applies in lawsuits commenced after July 1, 2011, the date that the standards set forth in Tennessee Code Annotated section 20-16-101 became effective).

## DISCUSSION

The plaintiffs argue that the trial court erred in granting summary judgment to the defendants based on its determination that the City's assessment of 2012 property taxes on real property located in South Cordova was lawful. Pursuant to Tennessee Code Annotated section 67-5-504(c), "Any annexing municipality that makes assessments of taxes shall only assess the tax on real property within the annexed territory if the annexation takes effect prior to January 1 of the year in which the assessment is made." As such, the dispositive issue in this case is whether the annexation ordinance passed by

the City in 2001 took effect before or after January 1, 2012. Resolution of that question requires us to consider the statutes governing municipal annexation in Tennessee.

Traditionally, the power to alter municipal boundaries has been viewed as a natural result of the legislature's broader power to establish and abolish municipal corporations. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 702 (Tenn. 2009) (citing *Williams v. City of Nashville*, 15 S.W. 364, 365 (Tenn. 1891)). As such, prior to 1955, the General Assembly had unlimited and exclusive authority to alter municipal boundaries in Tennessee. *Id*. at 703. During that time, the General Assembly's power was so broad that "an individual subject to a validly-enacted annexation had no legal avenue through which to oppose it." *Id*.

In 1955, the General Assembly granted municipalities the authority to extend their own boundaries through annexation by ordinance. *See* Tenn. Code Ann. § 6-51-102(a)(1) (2011).[2] The General Assembly provided, however, that a municipality's annexation decision would not become operative until 30 days after the final passage of its annexation ordinance. *Id*. ("[T]he ordinance shall not become operative until thirty (30) days after final passage thereof."). The General Assembly granted property owners in the annexed area the right file a *quo warranto* action during that 30-day period to contest the validity of the annexation ordinance. Tenn. Code Ann. § 6-51-103(a)(1)(A).

Recognizing that the General Assembly "could have delegated to the municipalities the authority to annex with no right of judicial review absent constitutional restraint," Tennessee courts have consistently held that the statutory right to contest an annexation ordinance is very limited. *Highwoods Props., Inc.*, 297 S.W.3d at 707-08 (citations omitted). The "entire jurisdiction and authority" of the courts to review a municipality's annexation ordinance is contained in the four corners of the statute. *Id*. at 708 (citing *City of Oak Ridge v. Roane Cnty.*, 563 S.W.2d 895, 897 (Tenn. 1978)). As such, "'the courts have no power to vacate an annexation ordinance for purely procedural defects,' because no such authority has been granted by statute." *Id*. (quoting *City of Watauga v. City of Johnson City*, 589 S.W.2d 901, 906 (Tenn. 1979)). "Rather, the general rule is that defects in an annexation ordinance must be presented in the context of a challenge to its reasonableness or necessity by way of a timely *quo warranto* challenge." *Id*. (citing *City of Oak Ridge*, 563 S.W.2d at 898; *City of Knoxville v. State*

---

[2] On May 16, 2013, the General Assembly enacted legislation that established a moratorium preventing municipalities from extending their corporate limits by means of annexation ordinance from April 15, 2013 to May 15, 2014. *See* Tenn. Code Ann. § 6-51-122(a)(1)(A). Later, the General Assembly amended Tennessee Code Annotated section 6-51-102 to prohibit all annexations by ordinance that are not both operative and effective prior to May 16, 2015. *See* 2014 Tenn. Pub. Acts, ch. 707 § 2(b) (effective May 16, 2015). It is undisputed, however, that the annexation ordinance at issue in this case took effect prior to those changes and is not affected by them.

*ex rel. Graves*, 341 S.W.2d 718, 721 (Tenn. 1960)).  Moreover, the *quo warranto* action must be filed within 30 days after the final passage of the annexation ordinance because "the courts have no jurisdiction [over] such suits thereafter."  *City of Oak Ridge*, 563 S.W.2d at 898.

When a *quo warranto* action to contest the validity of an annexation ordinance is timely filed, the operative date of the annexation ordinance is "held in abeyance" pending litigation of the action.  *Highwoods Props., Inc. v. City of Memphis*, No. W2006-00732-COA-R3-CV, 2006 WL 3628102, at *7 (Tenn. Ct. App. Dec. 14, 2006), *aff'd*, 297 S.W.3d 695 (Tenn. 2009).  The sole question before the court in such an action is "whether the proposed annexation is or is not unreasonable in consideration of the health, safety and welfare of the citizens and property owners of the territory sought to be annexed and the citizens and property owners of the municipality."  Tenn. Code Ann. § 6-51-103(d)(1).  If the court finds "the ordinance to be unreasonable, or to have been done by exercise of powers not conferred by law," then the court must issue an order vacating the ordinance, and the municipality will be prohibited from annexing any part of the territory at issue for 24 months.  *Id*.  However, in the absence of such a finding, the court must issue an order sustaining the validity of the ordinance, and the ordinance will become operative 31 days after a final judgment is entered unless an abrogating appeal is taken from the judgment or the court grants the municipality's petition to defer the effective date of the ordinance.  *Id*.; *see* Tenn. Code Ann. § 6-51-103(d)(2) ("Upon petition of the municipality, the presiding court may . . . order that the effective date of the ordinance be fixed as December 31 following the date of entry of the judgment or determination of appeal.").

In this case, the City passed an ordinance to extend its boundaries by annexing South Cordova on November 20, 2001.  The ordinance stated that the annexation would take effect on December 31, 2001.  The *Cochran I* plaintiffs timely filed a *quo warranto* action contesting the validity of the ordinance during the 30-day period before it became operative.  No other *quo warranto* actions were filed during the 30-day period.  A final judgment dismissing *Cochran I* was entered on June 28, 2011, and no appeal was taken from it.  *Cochran II* was not filed in the 30-day period following passage of the annexation ordinance and, as such, did not operate to hold the annexation ordinance in abeyance.  Therefore, based on a straightforward application of the governing statutes to the undisputed facts, the City's annexation ordinance became operative, and the City's annexation of South Cordova took effect 31 days later on July 29, 2011.

Nevertheless, the plaintiffs argue that the City's annexation ordinance became effective, at the earliest, on July 1, 2012, when the City began providing municipal services to the residents of South Cordova.  As we explained, however, only a *quo warranto* action filed within 30 days of an annexation ordinance's passage will operate to

hold the annexation in abeyance. *See City of Oak Ridge*, 563 S.W.2d at 898. The failure to extend the rights and privileges of citizenry immediately upon the citizens of a newly annexed area does not render a municipality's annexation ordinance void or entitle newly annexed citizens to a refund of taxes. *See Lee v. City of Chattanooga*, 500 S.W.2d 900, 920 (Tenn. 1973) ("If there is a remedy for dereliction in not furnishing the services stipulated, it is not the abatement of taxes."); *State ex rel. Hardison v. City of Columbia*, 360 S.W.2d 39, 42-43 (Tenn. 1962) (holding that annexation ordinances were not void on ground that citizens of an annexed area would not have rights and privileges of citizens immediately upon annexation); *see also* Tenn. Code Ann. § 6-51-108(d) (providing aggrieved property owners in an annexed area the right to petition for a writ of mandamus compelling the municipality to provide services). Moreover, once an annexation takes effect, the municipality may only contract its boundaries by ordinance or referendum vote pursuant to Tennessee Code Annotated section 6-51-201. As such, the City's failure to provide municipal services to the residents of South Cordova until July 1, 2012 did not alter or delay the effective date of the annexation. Likewise, the mayor had no authority to alter or delay the annexation. Because the City's annexation of South Cordova took effect on July 29, 2011, it was entitled to collect property taxes from the newly annexed area for 2012, and the trial court's grant of summary judgment in favor of the defendants was appropriate.

In the "Statement of Issues Presented for Review" section of their appellate brief, the plaintiffs pose the following question: "Did the Trial Court err in merely adopting verbatim the eight page Findings of Fact and Conclusions of Law submitted by the Defendant <u>prior</u> to the Court's ruling?" As the defendants point out, however, the "Argument" section of the plaintiffs' appellate brief contains neither citations to the alleged error in the record, nor any argument explaining how the trial court erred. Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of an appellate brief as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure constitutes a waiver of the issue. *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2009) (citations omitted). Moreover, an issue is waived when it is simply raised without any argument regarding its merits. *Id*. at 56. As such, we decline to address this issue.

## CONCLUSION

In light of the foregoing, we affirm the judgment of the trial court. The costs of this appeal are taxed to the appellants, Joseph O'Shields, Tommie Isom, Warren Riggs, Roy Fisk, and Ken Netherton, jointly and severally, and their sureties, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE