IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 18, 2007 Session

# HIGHWOODS PROPERTIES, INC., ET AL. v. CITY OF MEMPHIS

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-2070-1      Walter L. Evans, Chancellor**

_____

**No. W2007-00454-COA-R3-CV - Filed November 27, 2007**

_____

This appeal involves the second case filed by the appellants to challenge an annexation ordinance. Previously, the appellants filed a *quo warranto* action seeking to have the annexation ordinance declared null and void on various grounds. Other landowners had previously filed *quo warranto* actions that were consolidated and still pending, and the appellants sought to consolidate their action with the others. The trial court held that the appellants' *quo warranto* action was not timely filed, and accordingly dismissed it. On appeal, this Court affirmed. The consolidated *quo warranto* proceedings concluded with a consent order approving the reasonableness of the annexation ordinance, but providing that the annexation would take place in two phases. The appellants then filed the present action seeking a declaration that the annexation accomplished through the consent order was procedurally invalid and unconstitutional. The trial court dismissed the appellants' complaint for failure to state a claim upon which relief could be granted. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and BEN H. CANTRELL, SP.J., joined.

John S. Golwen, Colleen D. Hitch, Memphis, TN, for Appellants

Jonathan C. Hancock, Ross E. Webster, Memphis, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On November 4, 1997, the Memphis City Council adopted, upon a third and final reading, annexation ordinance No. 4513, which annexed into the City of Memphis ("City") an area referred to as Study Area No. 42, or the Southwind-Windyke area. The ordinance itself was to become effective upon passage by the City Council, being signed by the Council Chairman, certified and delivered to the Mayor's office, and "as otherwise provided by law." The ordinance provided that the actual date of annexation would be January 1, 1998, when the territory would become part of the City and the City would begin providing services to the area.

On December 3, 1997, within thirty days of the ordinance being adopted, certain property owners in the Southwind-Windyke area filed three suits in the nature of *quo warranto* proceedings opposing the annexation ordinance pursuant to Tenn. Code Ann. § 6-51-101, *et seq.*[1] These three *quo warranto* actions were consolidated in chancery court and remained pending there for several years.

On December 29, 2005, Highwoods Properties, Inc., Highwoods Realty, LP, Highwoods/Tennessee Holdings, LP, and AP Southeast Portfolio Partners, LP ("Appellants"), which also own property in the Southwind-Windyke area, filed another *quo warranto* proceeding in chancery court and attempted to consolidate their action with the three previously filed *quo warranto* actions. Basically, Appellants alleged that the annexation ordinance was not reasonable, that it constituted an exercise of power not conferred by law, and that a potential consent judgment among the current parties included terms that would be detrimental to Appellants and inconsistent with the original ordinance. The chancery court dismissed Appellants' *quo warranto* action as time-barred because it was not filed within thirty days of the passage of the annexation ordinance, and on appeal, this Court affirmed. *See Highwoods Properties, Inc. v. City of Memphis*, No. W2006-00732-COA-R3-CV, 2006 WL 3628102 (Tenn. Ct. App. Dec. 14, 2006).

On June 8, 2006, the trial court entered an "Amended Consent Final Judgment" in the originally consolidated *quo warranto* actions. Pursuant to a map that was attached to the order, portions of the Southwind-Windyke area were designated "Area A" (Sub-areas A1, A2, and A3) and the remaining portions were designated "Area B" (Sub-areas B1 and B2). The amended final consent order provided that annexation of Area A was reasonable and necessary, and Area A was to be annexed on December 31, 2006. The order also provided that annexation of Area B would be reasonable and necessary, and Area B would be annexed on December 31, 2013. In effect, the

---

[1] Tenn. Code Ann. §§ 6-51-102–103 (2005) provide that an annexation ordinance shall not become operative until thirty days after its final passage, during which time aggrieved property owners may file *quo warranto* proceedings contesting the validity of the ordinance. In a *quo warranto* proceeding, a court can issue an order vacating the ordinance if it finds that the ordinance is unreasonable or that the municipality exercised powers not conferred by law. Tenn. Code Ann. § 6-51-103(d). In the absence of such a finding, the court is to issue an order sustaining the validity of the ordinance, and the ordinance then becomes operative thirty-one days after the judgment if no appeal is taken therefrom.

amended consent order approved annexation of the same area, Study Area No. 42, but in two phases. The court found that the entire proposed compromise and settlement was reasonable and proper, and the order provided that "the validity of Ordinance No. 4513 is hereby sustained."

Appellants' property was located in Area A, which was annexed first. On October 24, 2006, Appellants filed a complaint for declaratory judgment in chancery court challenging the annexation scheme on two bases. First, Appellants claimed that the final consent judgment was invalid because it effectively modified or repealed the original annexation ordinance without complying with the procedures set forth in Tenn. Code Ann. § 6-51-101, *et seq.*, including notice and passage by the City Council, and it allegedly provided for operative dates that did not comply with the statutes. Second, Appellants claimed that the annexation scheme was unconstitutional pursuant to Article II § 28 of the Tennessee Constitution because it "discriminate[d] in taxation among property owners" in the Southwind-Windyke area. Appellants claimed that property owners within Area A were being unconstitutionally discriminated against. Although the complaint merely referenced "Article 2 § 28 of the Tennessee Constitution," Appellants apparently relied upon a portion of that section that provides, in part: "Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction." Tenn. Const. art. II, § 28.

The City of Memphis filed a motion to dismiss the complaint pursuant to Tenn. R. Civ. P. 12.02(6), asserting various theories to justify dismissal. First, the City contended that Appellants' claims were barred by res judicata and/or collateral estoppel because they were or could have been litigated in their previous *quo warranto* action, had it been timely filed. Second, the City claimed that Appellants did not have standing to challenge a consent judgment to which they were not parties. Third, the City argued that Appellants' complaint should be dismissed because they failed to join indispensable parties in the proceeding, including the landowners who were parties to the consent judgment in the consolidated *quo warranto* actions. Fourth, the City claimed that the exclusive method for challenging the annexation ordinance was through a *quo warranto* proceeding pursuant to Tenn. Code Ann. § 6-51-101, *et seq.*, so that bringing the declaratory judgment action was improper. Finally, the City claimed that the complaint should be dismissed on its merits because the consent judgment did not modify or repeal the original ordinance, nor did it create an unconstitutional taxing structure.

Following a hearing, the trial court entered an order that granted the City's motion to dismiss "on all grounds set forth therein" and dismissed Appellants' complaint in its entirety. Appellants filed a timely notice of appeal.

## II. ISSUES PRESENTED

Appellants present the following issue for review: "Whether the Chancery Court erred in its January 22, 2007 order by granting Defendant's motion to dismiss on all grounds set forth therein?" We affirm, based upon our conclusion that Appellants' complaint failed to state a claim upon which relief could be granted.

## III. STANDARD OF REVIEW

A Rule 12.02(6) motion to dismiss for failure to state a claim seeks only to determine whether the pleadings state a claim upon which relief can be granted. *Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007). The motion challenges the legal sufficiency of the complaint, not the strength of the plaintiffs' proof. *Id.* (citing *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999)). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law because they do not constitute a cause of action. *Smith v. First Union Nat. Bank of Tenn.*, 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997). We must construe the complaint in favor of the plaintiffs, accept the allegations of fact as true, and deny the motion unless it appears that the plaintiffs can establish no facts supporting the claim that would warrant relief. *Crews v. Buckman Lab. Intern., Inc.*, 78 S.W.3d 852, 855 (Tenn. 2002) (citing *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999)).

## IV. DISCUSSION

First of all, we find it necessary to address the scope of the challenges to an annexation ordinance that are available to Appellants. As the Tennessee Supreme Court explained in *City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 896 (Tenn. 1978), at the time the General Assembly enacted Chapter 113, Public Acts of 1955, which is now Tenn. Code Ann. § 6-51-101, *et seq.*, "there was no aspect of the legislative power to extend or contract municipal boundaries that was subject to review by the courts, absent constitutional infirmity." For example, in *McCallie v. Mayor of Chattanooga*, 40 Tenn. (3 Head) 317, 321 (1859), the Court stated:

> The extension of the corporate limits of Chattanooga was an exercise
> of governmental power of which the persons newly taken in could not
> be heard to complain; they had no voice in the matter, no power to
> resist, nor was any legal right of theirs infringed thereby.

Similarly, in *Town of Oneida v. Pearson Hardwood Flooring Co.*, 169 Tenn. 449, 452, 88 S.W.2d 998, 999 (1935), the Court explained:

> The Legislature, clothed with power to create municipal corporations,
> may at will alter their boundaries without the consent of the
> municipality or the inhabitants of its territory. That is a political
> power which, in the absence of a constitutional restraint, is not open
> to review or hindrance by the courts.

In 1953, however, Article XI, Section 9, of the Tennessee Constitution was amended to include the following sentence: "The General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered." *City of Oak Ridge*, 563 S.W.2d at 897 (quoting Tenn. Const. art. XI,

§ 9). The Legislature responded by delegating to municipalities the power to annex territory by ordinance. *Id.* When it did so, the Legislature "could have delegated to the municipalities the authority to annex with no right of judicial review absent constitutional restraint." *State ex rel. Bastnagel v. City of Memphis*, 224 Tenn. 514, 520, 457 S.W.2d 532, 534 (1970). However, the Legislature also granted jurisdiction to the courts to entertain a contest of an annexation ordinance in what is now Tenn. Code Ann. § 6-51-103 (2005). *City of Oak Ridge*, 563 S.W.2d at 897. The statute provides that an aggrieved property owner may contest an annexation ordinance by filing a suit in the nature of a *quo warranto* proceeding,

> to contest the validity thereof on the ground that it reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitutes an exercise of power not conferred by law.

Tenn. Code Ann. § 6-51-103(a)(1)(A) (2005).[2] Thus, this statute gave "aggrieved landowners in the territory to be annexed a right of judicial review which they would not otherwise have had . . . ." *Bastnagel*, 224 Tenn. at 521, 457 S.W.2d at 535.

The Supreme Court addressed these changes in *City of Oak Ridge*, 563 S.W.2d at 897. The plaintiff had filed a lawsuit to void an annexation ordinance because the city allegedly failed to give public notice before a hearing on the annexation, and it allegedly failed to submit its plan for implementing municipal services to the county planning commission, as required by Tenn. Code Ann. § 6-51-102. *Id.* The complaint was filed approximately seven months after the ordinance was adopted. *Id.* at 896. The trial court held that the statutory thirty-day limitation period only applied to *quo warranto* suits contesting the reasonableness of an annexation ordinance, and that it did not apply to the plaintiff's suit seeking to void the ordinance for procedural deficiencies. *Id.* The Tennessee Supreme Court reversed and ordered the suit dismissed, after explaining the "exclusiveness" of the plaintiff's statutory right to challenge an annexation ordinance:

> Within the four corners of that statute lies the entire jurisdiction and authority of the Courts to review the actions of municipalities in enacting annexation ordinances. We reach that conclusion both because of the state of the law at the time it was adopted and from a careful reading and analysis of the statute itself.
>
> . . .

---

[2] The Tennessee Supreme Court has struck down an amended portion of this statute as unconstitutional, which extended the right to contest an annexation ordinance to owners of property that bordered annexed property, because there was no rational basis for the amendment's population classifications that excluded residents of certain counties from application of the amendment. *See Hart v. City of Johnson City*, 801 S.W.2d 512, 517 (Tenn. 1990). As such, only owners of property lying within the territory have standing to bring a *quo warranto* action pursuant to Tenn. Code Ann. § 6-51-103.

Bearing in mind that no right to review the extension of municipal boundaries existed prior to Chapter 113, Public Acts 1955, *absent constitutional infirmities*, the rights that now exist are limited to those granted in [the relevant sections of the statute].

The statute expressly authorizes a court contest on only one ground[:] whether the annexation is reasonably necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole. The statute expressly authorizes the courts, trial and appellate, to "vacate" an annexation ordinance upon a finding of unreasonableness. That authorization is exclusive. *The courts are not expressly or impliedly authorized to void a municipal ordinance for failure of the municipality to give notice, hold a public hearing*, or submit a plan of services to the local planning commission.[3]

**City of Oak Ridge**, 563 S.W.2d at 897-98 (emphasis added and footnote omitted). The Court went on to note that, in a timely filed *quo warranto* suit, a city would be unable to prove that annexation was necessary for the welfare of affected property owners if it had not held a public hearing after the required notice. **Id.** at 898.

In a subsequent case, the Supreme Court interpreted the holding of **City of Oak Ridge** to mean that "courts were without statutory or common-law authority to vacate an annexation ordinance for failure to follow the procedures outlined in T.C.A. § [6-51-102]," such as procedural defects in notices and public hearings, unless there were constitutional infirmities. **City of Watauga v. City of Johnson City**, 589 S.W.2d 901, 905 (Tenn. 1979). Simply stated, "the courts have no power to vacate an annexation ordinance for purely procedural defects." **Id.** at 906.

The pivotal case addressing the issue of whether a *quo warranto* action is the exclusive means of challenging an annexation ordinance is **State ex rel. Earhart v. City of Bristol**, 970 S.W.2d 948 (Tenn. 1998), where the Supreme Court was presented with a unique set of facts. In 1989, the City of Bristol had passed two annexation ordinances that annexed approximately four miles of highway right-of-way, but no other property. **Id.** at 949. In 1995, the city adopted 24 more annexation ordinances, attempting to annex property adjacent to the previously annexed highway right-of-way. **Id.** at 950. Several affected property owners then filed *quo warranto* and declaratory judgment suits alleging, among other things, that the 1989 ordinances were null and void because they did not annex any people, private property, or commercial activities. **Id.** If the 1989 ordinances were void, the 1995 ordinances would also be illegal because the tracts to be annexed were not otherwise contiguous to the city's boundaries. **Id.** The city contended that the 1989 ordinances were immune to attack because no *quo warranto* suit was filed by an aggrieved landowner within thirty

---

[3] Tenn. Code Ann. § 6-51-102(a)(2)(B) (2005) now provides that a county legislative body may file a *quo warranto* proceeding to contest the reasonableness of a plan of services under certain circumstances.

days after the ordinances' adoption, and it claimed that any questions of the ordinances' validity were subsumed in the issue of reasonableness. *Id.* at 951. The Court rejected the city's arguments, noting that no one had standing to contest the 1989 ordinances in a *quo warranto* action because the ordinances did not include people, private property, or commercial activities. *Id.* In effect, then, under the city's theory, there would be no effective judicial review of annexation ordinances that utilized the highway right-of-way approach to bring non-contiguous areas into a municipality. *Id.* The Supreme Court found no authority for the notion that persons who did *not* own property within the territory to be annexed were bound by the thirty-day rule of Tenn. Code Ann. § 6-51-103 for bringing a *quo warranto* action. *Id.* at 953. The Court distinguished previous cases cited by the city as involving "plaintiffs who had standing to sue under the statutes, because they owned property within the territory being annexed, but neglected to file suit within the time allowed." *Id.*; *see, e.g.*, ***City of Oak Ridge v. Roane County***, 563 S.W.2d 895 (Tenn. 1978); ***Brent v. Town of Greeneville***, 203 Tenn. 60, 309 S.W.2d 121 (1957).

The Court went on to conclude that the property owners could bring a declaratory judgment action to challenge the validity of the 1989 ordinances, stating:

> Under the clear language of the statute, suits for *quo warranto* on the grounds that the annexation is not reasonably necessary to the safety and welfare of the inhabitants and property involved, are limited to persons owning property within the territory; and, once a *quo warranto* suit is appealed and found valid, the judgment of the appellate court is final and "not . . . subject to contest . . . ." Tenn. Code Ann. § [6-51-]103(d) (1992). . . .
>
> But, where the *quo warranto* proceeding is not available, alternative equitable remedies are not barred. "[W]here the remedy by *quo warranto* is available, it is usually held that there is no concurrent remedy in equity, unless by virtue of statutory provision. But if *quo warranto* is not an adequate remedy, it will not be a bar to alternative remedies." 65 Am.Jur.2d *Quo Warranto* § 7 (1972). The availability of other remedies is specifically acknowledged in section 6-51-113 (1992), which provides, "Except as specifically provided in this part, the powers conferred by this part shall be in addition and supplemental to, and the limitations imposed by this part shall not affect the powers conferred by any other general, special or local law." The Tennessee Declaratory Judgment Act is just such another general law conferring the power to challenge the validity and construction of statutes and municipal ordinances. Under the Declaratory Judgment Act,
>
>> Any person . . . whose rights, status, or other legal relations are affected by a statute, [or] municipal

-7-

> ordinance, . . . may have determined any question of
> construction or validity arising under the . . . statute,
> [or] ordinance, . . . and obtain a declaration of rights,
> status or other legal relations thereunder.

Tenn. Code Ann. § 29-14-103 (1980). *Earhart*, 970 S.W.2d at 952-53. The Court cited a decision of the Texas Supreme Court, which broadly stated that a *quo warranto* proceeding was the only method of attacking annexation under Texas law *unless* the annexation was wholly void. *Id.* at 953 (citing *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex. 1991)). In another case cited by the Court, an Illinois appellate court allowed a challenge to the "validity" of an older annexation ordinance that used the same "roadway annexation" scheme at issue in ***Earhart***. *Id.* (citing *People ex re. Coojar Realty Corp. v. Village of Burr Ridge*, 81 Ill.App.2d 203, 225 N.E.2d 39 (1967)). Our Supreme Court then addressed the validity of the city's "roadway annexation," or attempts to reach distant property through a highway right-of-way, and the means of challenging such action:

> The majority of courts have interpreted the requirement that
> the annexed land be "contiguous," to not allow the annexation of thin
> strips of land to connect a larger parcel of land to a municipality.
> *State ex Rel. Dept. of Transp. v. City of Milford*, 576 A.2d 618, 622
> (Del. Ch. 1989) (see cases cited therein). These decisions articulate
> the principle implicit in the Tennessee statute. The validity of an
> annexation ordinance alleged to exceed the authority delegated by the
> legislature is subject to challenge under the Declaratory Judgment
> Act. And whereas Bristol is correct in contending that objections to
> reasonableness under section 6-51-102 must be filed within 30 days,
> that limitation does not apply to suits contesting the validity of an
> ordinance which purports to annex an area that does not include
> people, private property, or commercial activity and is, therefore,
> void. *See State ex rel. Collier v. City of Pigeon Forge*, 599 S.W.2d
> 545 (Tenn. 1980).

*Earhart*, 970 S.W.2d at 953-54.

There has been a divergence in opinion as to whether ***Earhart*** should be broadly interpreted as authorizing a declaratory judgment action in any case challenging the "validity" of an annexation ordinance (as opposed to its reasonableness), or whether it should be narrowly limited to cases in which no one had standing to bring a *quo warranto* action. Some courts have focused on the Supreme Court's broad statement that "[t]he *validity* of an annexation ordinance alleged to exceed the authority delegated by the legislature is subject to challenge under the Declaratory Judgment Act," *id.* at 954 (emphasis added), to conclude that only challenges to the *reasonableness* of the annexation ordinance need be raised in a *quo warranto* action within thirty days. *See **Blount v. City of Memphis***, W2006-01191-COA-R3-CV, 2007 WL 1094155, at *4 (Tenn. Ct. App. Apr. 13, 2007);

***Town of Oakland v. Town of Somerville***, No. W2002-02301-COA-R3-CV, 2003 WL 22309498, at *6-7 (Tenn. Ct. App. Oct. 7, 2003) *perm. app. denied* (Tenn. Mar. 22, 2004); ***Jefferson County v. City of Morristown***, No.03A01-9810-CH-00331, 1999 WL 817519, at *7 (Tenn. Ct. App. E.S. Oct. 13, 1999). Under this interpretation, a party need not be an "aggrieved owner" of property in order to have standing to bring a declaratory judgment challenge to the annexation, ***Jefferson County***, 1999 WL 817519, at *7, and the time restrictions applicable to *quo warranto* actions have also been held inapplicable. ***Town of Oakland***, 2003 WL 22309498, at *7.

Conversely, in ***Snell v. City of Murfreesboro***, No. M2003-02716-COA-R3-CV, 2004 WL 1924032, at *4 (Tenn. Ct. App. W.S. Aug. 27, 2004), we focused on the Supreme Court's more limited statement that the statutory thirty-day limit does not apply to "suits contesting the validity of an ordinance which purports to annex an area that does not include people, private property, or commercial activity and is, therefore, void." We interpreted *Earhart* as holding that an annexation ordinance may be challenged using remedies other than a *quo warranto* action, such as a declaratory judgment action, only if the *quo warranto* remedy is unavailable to any resident: "*Earhart* clearly applies only in those situations where a municipality passes an ordinance that 'purports to annex an area that does not include people, private property, or commercial activity and is, therefore, void.'" *Id.* (quoting *Earhart*, 970 S.W.2d at 954). Under this interpretation, an annexation ordinance could only be challenged by declaratory judgment if it was void for the reasons set forth in ***Earhart***. *Id. Cf.* ***Coleman v. City of Memphis***, No. W2000-02865-COA-R3-CV, 2001 WL 1381277, at *3 (Tenn. Ct. App. Nov. 5, 2001) *perm. app. denied* (Tenn. Apr. 29, 2002) (holding that plaintiffs could not challenge annexation outside the thirty-day window by filing a "Complaint for Declaratory Judgment and in the Nature of a *Quo Warranto* Proceeding," even if challenging the "validity and reasonableness" of annexation, relying upon ***City of Oak Ridge***, 563 S.W.2d at 897).

In this case, Appellants rely upon the first line of cases and claim that they were entitled to bring a declaratory judgment action at any time to challenge the alleged procedural deficiencies and constitutional defects in the annexation scheme, because they pertain to its "validity." The City of Memphis relies upon the latter view and contends that Appellants could only raise these issues in a *quo warranto* action, which they failed to timely file. For purposes of this appeal, we find it unnecessary to adopt one view of ***Earhart*** and denounce the other because the result under either is the same. First of all, regardless of the characterization of this action, we are unable to vacate this ordinance because of the alleged procedural defects. Second, we believe that the remedies provided under either view do not preclude constitutional challenges to an annexation ordinance.

### A.    Procedural Challenges

Appellants first claim that the annexation ordinance is invalid because it was modified and/or partially repealed by the consent judgment entered in the *quo warranto* action, without compliance with statutory procedures "including notice and passage by the City Council." Appellants also allege that the consent judgment purported to "provide for operative dates that do not comply with the Annexation Statute [§ 6-51-101, *et seq.*]."

In *City of Oak Ridge*, 563 S.W.2d at 896, the plaintiff brought an action to void an annexation ordinance, alleging, among other things, that the city failed to give notice in accord with the requirements of the statute. The Tennessee Supreme Court ordered the case dismissed, stating that "the courts are not expressly or impliedly authorized to void a municipal ordinance for failure of the municipality to give notice [or] hold a public hearing . . . ." *Id.* at 897-98. In a subsequent case involving "various alleged procedural defects," including a failure to provide notice, the Supreme Court explained *City of Oak Ridge* as holding that "courts were without statutory or common-law authority to vacate an annexation ordinance for failure to follow the procedures outlined in T.C.A. § [6-51-102]," such as procedural defects in notices and public hearings, unless there were constitutional infirmities. *City of Watauga*, 589 S.W.2d at 905. The Court succinctly stated, "the courts have no power to vacate an annexation ordinance for purely procedural defects," and it affirmed the trial court's dismissal of the case for failure to state a claim upon which relief could be granted. *Id.* at 906. Nothing in *Earhart* addressed or altered the rule regarding procedural defects that was expressed in *City of Oak Ridge* and *City of Watauga*. Even assuming *arguendo* that one could challenge an annexation ordinance's "validity" in a declaratory judgment action at any time, these alleged procedural defects would not render the annexation ordinance void, and we have no power to vacate the ordinance on these purely procedural grounds. In *City of Oak Ridge* and *City of Watauga*, the Supreme Court determined that the plaintiffs' procedural challenges should be dismissed. As such, we find that the trial court properly dismissed Appellants' procedural challenges.

Although we are satisfied that the trial judge correctly granted the motion to dismiss, we have examined the alleged procedural defects and find no merit in any of the claims. Appellants simply argue that the original annexation ordinance was modified or repealed by the consent order, so that the City Council should have issued another public notice, held another hearing, and re-passed the ordinance. We disagree. When the original *quo warranto* actions were filed on December 3, 1997, the annexation obviously could not be implemented on its original effective date of January 1, 1998. The filing of *quo warranto* proceedings "places in abeyance the operation of the annexation ordinance pending a determination of the reasonableness of the ordinance." *City of Bluff City v. Morrell*, 764 S.W.2d 200, 201 (Tenn. 1988). If the ordinance was not yet operative, certainly the actual annexation could not commence either. The *quo warranto* action remained pending for over eight years, and the amended final consent order was entered on June 8, 2006. Annexation of the entire Study Area No. 42, which was originally considered by the City Council and encompassed by the original ordinance, was deemed reasonable. No property was added to or exempted from the area to be annexed. The only change was in the dates that the annexation would take place – a portion of the area would be annexed on December 31, 2006, and the other portion would be annexed on December 31, 2013. As stated, the original date of annexation (January 1, 1998) had long since passed and the City necessarily had to set a new effective date for annexation. Indeed, any time a *quo warranto* action is filed and the ordinance is found to be valid, a municipality will be required to specify a new date of annexation if the original date has passed. Still, we find nothing in Tenn. Code Ann. § 6-51-101, *et seq.*, requiring the matter to be remanded to the City Council for another round of hearings before another effective date can be set. Similarly, we find nothing to suggest that

a City cannot delay the effective date of annexation, or that annexation must take place within a certain time period after the conclusion of a *quo warranto* proceeding.

Appellants claim that the consent order provided for "operative dates" that do not comply with Tenn. Code Ann. § 6-51-101, *et seq.* We presume that Appellants are referring to a portion of Tenn. Code Ann. § 6-51-103(d), which governs *quo warranto* actions:

> Should the court find the ordinance to be unreasonable, or to have been done by exercise of powers not conferred by law, an order shall be issued vacating the ordinance . . . . In the absence of such finding, an order shall be issued sustaining the validity of such ordinance, which shall then become *operative* thirty-one (31) days after judgment is entered unless an abrogating appeal has been taken therefrom.

(emphasis added). Pursuant to this section, in a *quo warranto* proceeding, a court should either: (1) find the ordinance unreasonable and enter an order vacating it, or (2) find the ordinance reasonable and valid and enter an order sustaining the validity of the ordinance, which then becomes operative thirty-one days after judgment is entered. *City of Bluff City*, 764 S.W.2d at 202. It is clear from a plain reading of this statute that it is the *ordinance* itself that becomes operative within thirty-one days, not the actual annexation. In *State ex rel. Bastnagel v. City of Memphis*, 224 Tenn. 514, 520, 457 S.W.2d 532, 534 (1970), the Tennessee Supreme Court expressly found that the term "operative" as used in the statute refers to the ordinance becoming "'operative' in the sense no suit could be filed thereafter under [Tenn. Code Ann. § 6-51-103]; . . . ." The Court determined that the "operative" date did not refer to "the actual date of annexation even though said date is later . . . ." *Id.* In that particular case, the Court recognized that the actual annexation date may have been "some several months" after the ordinance was finally passed. *Id. See also State ex rel. Trivett v. City of McMinnville*, No. M2003-02623-COA-R3-CV, 2005 WL 147762, at *9 (Tenn. Ct. App. Jan. 24, 2005) (describing the "operative" date of an annexation ordinance as when it would become "incontestable").

In this case, the consent order provides that "the effective date for the annexation of areas 'A1, A2, and A3,' . . . shall . . . become operative effective December 31, 2006, thus annexing this area into the city limits of the City of Memphis . . . ." The same language was used to address Area B. Clearly, these are the dates when the actual annexation will take place and the area will be brought into the city limits of Memphis. We find nothing in the consent order that contradicts the statute's provision that the ordinance itself shall "become operative thirty-one (31) days after judgment is entered unless an abrogating appeal has been taken therefrom." Tenn. Code Ann. § 6-51-103(d).

In sum, although we have no authority to vacate the annexation ordinance based upon the alleged procedural defects, Appellants' procedural challenges were meritless.

### B. *Constitutional Challenges*

In ***City of Oak Ridge***, our Supreme Court explained that our right to review municipal annexation is set forth in Tenn. Code Ann. § 6-51-101, *et seq.*, "absent constitutional infirmities." 563 S.W.2d at 897; *see also **Bastnagel***, 457 S.W.2d at 519 (noting that in passing § 6-51-101, *et seq.*, the legislature could have provided no right of judicial review "absent constitutional restraint"); ***State ex rel. McNamee v. City of Knoxville***, 824 S.W.2d 550, 552 (Tenn. Ct. App. 1991) (stating that until the legislature spoke, the judiciary had no part in annexation "except for constitutional infirmity"). The Eastern Section of this Court faced a slight variation of this issue in ***State ex rel. Vicars v. City of Kingsport***, 659 S.W.2d 367, 369 (Tenn. Ct. App. 1983) *perm. app. denied* (Tenn. Oct. 31, 1983), when plaintiffs alleged constitutional defects in an annexation by referendum. Although the applicable statutes, Tenn. Code Ann. §§ 6-51-104–105, did not provide for judicial review of such annexation, the Court relied upon the previously mentioned language regarding "no judicial review over annexation *absent* a *constitutional infirmity*" in concluding that the constitutional claims were reviewable. ***Id.*** The Court explained:

> Surely if a city undertakes to annex new territory by the referendum method, an annexation could be held invalid by a court of general jurisdiction if the evidence establishes constitutional infirmities either in the adoption of a resolution calling for a referendum or in the election process. To hold otherwise would abolish constitutional rights.

***Id.*** The Court went on to consider the merits of the plaintiffs' challenges and dismissed their suit. ***Id.*** We agree with the Eastern Section's reasoning and find that Tenn. Code Ann. § 6-51-101, *et seq.*, does not preclude Appellants from alleging constitutional violations caused by the annexation.

Appellants set forth their constitutional claim as follows:

> 25. If this Court finds that the Consent Final Judgment and Amended Consent Final Judgment were validly enacted, they are nevertheless invalid as unconstitutional because they discriminate in taxation among property owners within Study Area 42, subjecting taxpayers in Areas A and B to different tax rates in violation of Article 2 § 28 of the Tennessee Constitution. Therefore, the Consent Final Judgment and Amended Consent Final Judgment are invalid because they unconstitutionally discriminate against the Highwoods Plaintiffs as property owners within Area A.

Although Appellants merely referenced "Article 2 § 28 of the Tennessee Constitution," they apparently rely upon a portion of that section which states:

> The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. *Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.*

(emphasis added). Appellants did not explain the basis of their constitutional argument in their response to the motion to dismiss, nor did they address the merits of the claim in their initial brief to this Court. Instead, Appellants simply claimed that it was improper to dismiss their constitutional claim on a Rule 12.02(6) motion to dismiss. As discussed, the trial court granted the City's motion to dismiss on all grounds set forth therein, with one being that Appellants were incorrect in their assertion that they would be discriminated against in the resulting tax structure. The Court then dismissed Appellants' complaint for declaratory judgment in its entirety.

The Supreme Court explained the protections of the "equal and uniform clause" of Article II, Section 28 of our Constitution in *Albert v. Williamson County*, 798 S.W.2d 758 (Tenn. 1990). In that case, a county taxpayer alleged that imposing a tax on property within the county, but excluding property within municipalities, violated this same clause. *Id.* The taxpayer basically claimed that county taxpayers' property was being assessed a higher tax rate than city property. *Id.* at 759. The Court first quoted an explanation of this constitutional provision from a previous case:

> The uniformity required by section 28 of article 2 is limited to uniformity in rate, assessment, and valuation of the particular tax involved. It has no reference to a uniformity of the sum total of taxes which a citizen is required to pay; that is, it does not require that the total taxes assessed against property situated in a municipality shall not exceed the sum total of taxes assessed against property located outside of a municipality. It does require that there shall be uniformity of valuation and assessment of property for purposes of taxation, and that the tax levy for any given purpose shall be uniform throughout the territory to which it is applied.

*Id.* (quoting *King v. Sullivan County*, 128 Tenn. 393, 396-97, 160 S.W. 847 (1913)). The Court also noted that "the extra taxes that citizens of incorporated towns must pay are to support the municipal government . . . ." *Id.* The Court then summarized the correct interpretation of the "equal and uniform clause":

> In short, *King* and *Earnest* [*v. Greene County*, 138 Tenn. 442, 198 S.W. 417 (1917)] hold that there are three territorial entities in

-13-

every county in Tennessee, within the contemplation of sections 28 and 29, Article II of our Constitution for the application of the equal and uniform clause thereof, to-wit, incorporated towns, the county including incorporated towns and the county excluding incorporated towns; that our legislature has the discretion of equalizing tax burdens between the citizens of the three respective territories, imposed for the construction and maintenance of streets and highways, *provided that uniformity in rate, assessment and valuation is maintained with respect to property within the territorial limits of each of the respective entities.*

*Id.* at 761 (emphasis added).  For example, in ***Jones v. City of Memphis***, 101 Tenn. 188, 47 S.W. 138, 138-39 (Tenn. 1898), the City immediately brought territory into its city limits but exempted the newly annexed territory from taxation for police, fire, and light purposes for a period of ten years, while taxing the original territory.  The Supreme Court held that the city's attempt to implement different methods of taxation within its city limits was unconstitutional, explaining that taxation must be uniform and equal throughout the extent of the same jurisdiction for purposes of current expenses or future wants.  *Id.*

In their reply brief to this Court, Appellants "readily concede that property that lies within one jurisdiction can be subject to a tax structure that is different from property that lies within another jurisdiction."  However, Appellants contend that Area A and Area B are within the same jurisdiction.  Specifically, they claim that when the annexation ordinance itself became operative in July of 2006, Areas A and B automatically came "within the City of Memphis."  We respectfully disagree.

As previously discussed, Tenn. Code Ann. § 6-51-103 provides that when a trial court enters an order in a *quo warranto* action sustaining the validity of an annexation ordinance, the ordinance then becomes operative thirty-one days after the judgment unless an appeal is taken.  In ***Bastnagel***, our Supreme Court determined that the "operative date" of the annexation ordinance is when "the ordinance would become 'operative' in the sense no suit could be filed thereafter under [Tenn. Code Ann. § 6-51-103]; . . . ." 224 Tenn. at 518, 457 S.W.2d at 534.  The use of the word "operative" did not mean the "actual date of annexation even though said date is later . . . ." *Id.*  Here, the annexation ordinance itself became operative thirty-one days after the final consent order was entered.  However, the actual date of annexation of Area A was not until December 31, 2006, and the actual date of annexation of Area B will be on December 31, 2013.  The final order provides these effective dates of annexation as "thus annexing this area into the city limits of the City of Memphis."  Contrary to Appellants' contentions, the entire area did not immediately become annexed into the City of Memphis when the ordinance itself became final.

Applying these principles to the case before us, it is apparent that the Southwind-Windyke annexation ordinance did not implement an unconstitutional taxing structure.  Appellants' complaint that they are forced to pay City of Memphis taxes for a longer period than other property owners,

whose land is not yet part of the City, does not implicate the "equal and uniform clause" of Article II, Section 28. By its own terms, the clause requires "[e]ach *respective taxing authority* [to] apply the same tax rate to all property *within its jurisdiction*." Tenn. Const. art. II, § 28 (emphasis added). There is nothing in the record to suggest that the City of Memphis or any other taxing authority is implementing different tax rates within its own borders. Area B will not be annexed into the city limits of Memphis until 2013, so it is not necessary that Area A and Area B property be taxed at the same rate at this time. They are currently in different jurisdictions for purposes of this analysis. Moreover, the clause "does not require that the total taxes assessed against property situated in a municipality shall not exceed the sum total of taxes assessed against property located outside of a municipality." **Albert**, 798 S.W.2d at 759 (quoting *King*, 128 Tenn. at 396-97, 160 S.W. at 847). This clause of our Constitution simply requires that, for purposes of taxation, there be uniformity in rate, assessment, and valuation with respect to property within the territorial limits of the City, and uniformity within the territorial limits of the county, but outside the City. **Id.** at 761.

We agree with the trial court's finding that the allegations in Appellants' complaint, when considered alone and taken as true, were insufficient to state a claim for the relief sought, that is, a declaration that the annexation and final consent judgment were invalid. However, Appellants argue that it was inappropriate for the trial court to consider merit based arguments "at the Rule 12.02(6) motion to dismiss stage."

As support for this argument, Appellants rely exclusively upon **Cannon County Board of Education v. Wade**, 178 S.W.3d 725 (Tenn. Ct. App. 2005) *perm. app. denied* (Tenn. Oct. 24, 2005). In that case, the Middle Section of this Court considered an appeal arising out of a declaratory judgment action, questioning whether a school board was contractually obligated to arbitrate a teacher's grievance. **Id.** at 729-30. The trial court granted a Rule 12.02(6) motion to dismiss the complaint, finding that it failed to state a claim upon which relief could be granted. **Id.** at 727. On appeal, the Court vacated the judgment and remanded the matter, stating "[w]e are unable to conclude that there is no set of facts the School Board can present that would warrant the relief sought, which is a determination by declaratory judgment that the School Board is, or is not, contractually obligated to arbitrate Mr. Wade's grievance." **Id.** at 729-30. The Court went on to say:

> It should be further noted that Tenn. R. Civ. P. 12.02(6) motions are rarely appropriate in declaratory judgment actions. *See Glover v. Glendening*, 376 Md. 142, 829 A.2d 532, 539 (2003). The prevailing rule is that when a party seeking a declaratory judgment alleges facts demonstrating the existence of an actual controversy concerning a matter covered by the declaratory judgment statute, the court should not grant a Tenn. R. Civ. P. 12.02(6) motion to dismiss but, instead, proceed to render a declaratory judgment as the facts and law require. *Hudson v. Jones*, 278 S.W.2d 799, 804 (Mo. Ct. App. 1955); 1 Walter H. Anderson, *Actions for Declaratory Judgments* § 318, at 740 (2d ed.1951).
>     . . .

-15-

The purpose of a declaratory judgment action is to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations. *Snow v. Pearman*, 222 Tenn. 458, 436 S.W.2d 861, 863 (1968); Tenn. Code Ann. § 29-14-103 (2000). The fact that the party seeking declaratory relief is not entitled to the judgment sought (that it is on the losing side of the controversy) does not mean that the parties are not entitled to the relief from uncertainty that a declaratory judgment affords. . . .

*Id.* at 730. The Court also cited the following statement from the Tennessee Supreme Court's opinion in ***Frazier v. City of Chattanooga***, 156 Tenn. 346, 1 S.W.2d 786 (1928), which was on appeal from a demurrer dismissing the action:

It seems to us that the better practice in a case brought under the Declaratory Judgment Law . . . is to enter a decree, sometimes referred to as a 'declaration,' defining the rights of the parties under the issues made, even though such decree is adverse to the contentions in the bill.

***Id.***

Tenn. Code Ann. § 29-14-102(a) (2000) provides that courts have the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. § 29-14-103 (2000) addresses actions regarding statutes and written instruments:

Any person . . . whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . . may have determined any question of construction or validity arising under the . . . statute [or] ordinance . . . and obtain a declaration of rights, status or other legal relations thereunder.

"[W]hether to entertain a declaratory judgment action is, in certain situations, largely discretionary with the trial judge." ***State ex rel. Earhart v. City of Bristol***, 970 S.W.2d 948, 954 (Tenn. 1998). The trial judge's discretion is "very wide," and will not be disturbed on appeal unless the judge has acted arbitrarily. ***Id.*** (citing *Standard Accident Ins. Co. v. Carvin*, 217 Tenn. 662, 400 S.W.2d 235, 236 (1966); *S. Fire and Cas. Co. v. Cooper*, 200 Tenn. 283, 292 S.W.2d 177, 178 (Tenn. 1956)). Still, where there is a significant issue that needs resolving, refusing to issue a declaratory judgment cannot be excused on the basis of discretion. ***Id.*** For example, in ***Earhart***, discussed at length in the previous sections, the Supreme Court held that the trial court abused its discretion in refusing to issue a declaration regarding the validity of the 1989 "roadway annexation" ordinances, and instead limiting its review to the reasonableness of the 1995 ordinances. 970 S.W.2d at 955.

Despite the language relied upon by Appellants that it is "better practice" to issue a declaratory judgment defining the parties' rights, *see* ***Frazier***, 1 S.W.2d at 786, we find that the trial

judge did not commit reversible error by granting the motion to dismiss upon finding that Appellants' constitutional claim was meritless. In *Frazier*, the Supreme Court did not reverse the trial court's dismissal of the suit, but rather entered a decree itself that was adverse to the contentions in plaintiff's complaint for declaratory judgment.[4] We have also encountered several cases in which Tennessee courts have affirmed a trial court's granting of a Rule 12.02(6) motion to dismiss in a declaratory judgment action. *See, e.g.*, **Mills v. Shelby County Election Comm'n**, 218 S.W.3d 33, 35 (Tenn. Ct. App. 2006) *perm. app. denied* (Tenn. Dec. 18, 2006) (affirming Rule 12.02(6) dismissal of declaratory judgment suit alleging that statutes were unconstitutional because, *inter alia*, complaint did not allege facts that rose to the level of a violation of the plaintiff's constitutional rights); **Ralph v. Pipkin**, 183 S.W.3d 362, 370 (Tenn. Ct. App. 2005) *perm. app. denied* (Tenn. Dec. 5, 2005) (considering a plaintiff's request for a declaration that an insurance policy provided coverage, and upon finding that the policy did not provide coverage, granting the insurer's motion to dismiss for failure to state a claim was proper); **Dobbs v. Guenther**, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992) *perm. app. denied* (Tenn. Jan. 19, 1993) (reviewing a complaint seeking a declaration that a contract was unenforceable because it was "unfair" and "inequitable," and finding that the complaint was properly dismissed because the "requests for declaratory relief [did] not state claims upon which relief can be granted").

Again, the trial court dismissed Appellants' complaint upon several grounds, including that the allegations in Appellants' complaint, considered alone and taken as true, were insufficient to state a claim for the relief they sought – a declaration that the annexation was unconstitutional. Implicitly, the court found that the annexation ordinance did not result in an unconstitutional taxing structure. We also find that the taxing structure is constitutional, and we affirm the trial court's dismissal of Appellants' complaint.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellants, Highwoods Properties, Inc., Highwoods Realty, LP, Highwoods/Tennessee Holdings, LP, and AP Southeast Portfolio Partners, LP, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[4] Specifically, the plaintiff sought a declaration that an act amending the city charter had been repealed by implication. *Frazier*, 1 S.W.2d at 786. The trial court sustained the city's demurrer, dismissing the complaint. *Id.* The Supreme Court noted that it would have been "better practice" to enter a declaration on the issue, and simply entered a decree stating that the act was not repealed by implication. *Id.*