IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 10, 2019 Session

## PATRICK MASSERANO v. ALYSE MASSERANO

**Appeal from the Circuit Court for Shelby County**
**No. CT-001823-16  Jerry Stokes, Judge**

_____

### No. W2018-01592-COA-R3-CV

_____

Husband and Wife both appeal the trial court's ruling with regard to alimony. Based on Husband's failure to adequately support his arguments with legal authority, his issues are waived. We affirm the trial court's decision to exclude Wife's affidavit of income and expenses. We vacate the trial court's alimony award and remand for the entry of an order that contains specific findings of fact as to Wife's need and Husband's ability to pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Patrick Masserano, Collierville, Tennessee, Pro se.

Adam N. Cohen, Memphis, Tennessee, for the appellee, Alyse Masserano.

### OPINION

#### BACKGROUND

The parties to this appeal, Defendant/Appellee Alyse Masserano ("Wife") and Plaintiff/Appellant Patrick Masserano ("Husband") married September 5, 1998.[1] On May 3, 2016, Husband filed a complaint for divorce in the Shelby County Circuit Court. Therein, Husband alleged that irreconcilable differences had arisen between the parties, and that the parties had been living separately for over two years. Both parties are law

_____

[1] Wife had one child prior to the parties' relationship. No children were born of the marriage or at issue in their divorce.

school graduates. Neither party was a licensed lawyer at the time of trial. Husband never worked as a lawyer; instead, he works in the financial sector. Wife worked for a few years as a lawyer following her licensure but had not worked since 2004; Wife's law license was placed on disability inactive status following the filing of the divorce complaint. Likewise, Husband has never practiced law but has consistently worked in banking and finance, and now has his own consulting business based in the United Kingdom.

Following the filing of the complaint for divorce, protracted litigation between the parties ensued, including various disputes regarding temporary support and discovery. At one point, the litigation was stayed to allow Wife to seek intensive mental health treatment.[2]  Finally, on January 26, 2018, the parties entered into a Partial Marital Dissolution Agreement ("PMDA") in which they stipulated to grounds for divorce and divided the marital estate.

Therein, the parties agreed that Husband would continue paying the mortgage and taxes related to the parties' home in which Wife is still living.[3] The parties further agreed that they would each retain the personal property in their possession, their respective vehicles, and any bank accounts in their individual names. Moreover, Husband also agreed to pay Wife a lump sum of $15,000.00, with a small portion of the amount payable at the time the PMDA was entered and the remaining balance payable at the time the final divorce decree was entered. Finally, Husband agreed to pay Wife "as a division of marital property . . . thirty thousand dollars ($30,000.00) of Wife's attorney's fees directly" to Wife's attorneys. The PMDA explained that as a result of this payment, "Wife has agreed not to seek an additional lump-sum award of attorney's fees from Husband in this litigation." The parties agreed, however, that this provision "does not preclude either party from raising nor the Court from considering attorney's fees as a component of any alimony argument at a final hearing in regard to Wife's obligation to any outstanding fees owed to her counsel." Finally, the PMDA stated that issues related to the type, amount, and duration of alimony were reserved for a final hearing. As a result of this agreement, Wife was awarded over 80% of the marital assets, while Husband was obligated with a similar share of the marital debt.

The trial court held its final hearing on June 1, 2018, in which the only remaining issue was alimony. At the hearing, the trial court heard testimony from the parties, as well as Wife's clinical psychologist, John Leite. Wife testified that although she worked as a lawyer following the parties' marriage, she and Husband agreed that she could terminate her employment in 2004. There is no dispute that Wife has not worked in any income-earning capacity since 2004.

---

[2] Wife did not actually receive this treatment. According to Wife, she was unable to afford the treatment as she relied solely on income from Husband. According to Husband, the stay was simply a delay tactic.

[3] This obligation would continue for eight years until the mortgage on the house was satisfied.

- 2 -

Wife and Dr. Leite both testified that Wife's psychiatric disorders largely prevent her from working currently and in the immediate future. According to Dr. Leite, Wife suffers from depression, bipolar disorder, and borderline personality disorder. Wife was previously treated as an inpatient for suicidal ideations and alcohol abuse. Although Dr. Leite only began treating Wife following the initiation of this litigation, he opined that she had been suffering from these disorders for nearly two decades. Based on this diagnosis, Dr. Leite testified that Wife was currently unable to work and, in fact, requires a few months of intensive in-patient dialectical behavior therapy, at a cost of approximately $30,000.00 per month. Although Dr. Leite testified that Wife could eventually hold down a job, possibly even a high functioning job such as attorney, she would require intensive treatment and nearly perfect conditions to do so.

During the trial, the trial court excluded Wife's affidavit of income and expenses following an objection that the document had not been timely provided in discovery; nevertheless, Wife testified extensively regarding her expenses, which she stated totaled well over $6,000.00 per month. Wife's psychologist also testified that Wife owed approximately $7,500.00 in fees for his services, not including time testifying. Wife testified that she was also required to pay for health insurance, but her testimony did not provide a figure. Husband testified that Wife's insurance costs $1,160.00 per month, which he described as "outrageously expensive." Thus, the testimony concerning Wife's expenses was that they totaled well over $7,000.00 per month.

There was no dispute that Husband provided the only income to the family during the parties' twenty year marriage. In 2006 the parties moved to the United Kingdom so that Husband could work as an employee of Lloyd's of London. In 2014, Husband thereafter left that employment to start his own financial consulting firm.[4] In this capacity, Husband would work on a contractual basis for business entities. Based on Husband's employment alone, Wife submitted that the parties' enjoyed a lavish lifestyle during this time including frequent vacations.

At trial, Husband's claimed current gross income of $13,750.00 per month, a decrease in income from years past due to the loss of a significant client. Husband testified that he arrived at the figure after several deductions, including sales tax, overhead, business development costs, and corporate tax. Before these costs, Husband testified that his "revenue" is $21,000.00 per month and that his income stems from a single contract. Husband testified that after personal taxes, he earns approximately $9,625.00 per month. Considering his personal expenses of $10,607.83 per month coupled with the obligations under the PMDA to pay the mortgage on the marital home and a portion of Wife's attorney's fees, Husband claimed that his current income could

---

[4] The parties disputed whether the decision to leave this employment was voluntary. According to Husband, his job was eliminated and he received a redundancy bonus paid over three years that artificially inflated his income for 2014, 2015, and 2016, as discussed *infra*.

not support his expenses, resulting in a deficit of nearly $1,000.00 prior to any consideration of long-term alimony.

Wife did not credit Husband's assertion that he earned only $165,000.00 per year. Wife questioned whether Husband was improperly excluding certain retained earnings from his business, whether the expenses of his business were overstated, and whether Husband was concealing certain payments from a previous client by deferring that income to 2018. As an example, Husband admitted that as late as 2017, he deducted the entire cost of his London flat from his gross income, by invoicing the cost to a client, thereby allegedly decreasing his income by $60,000.00 per year.[5] Husband also admitted that his business paid other expenses on his behalf, such as vacations, that were not included in his calculation.

Wife also argued that a yearly income of $165,000.00 was not consistent with Husband's historical earnings. Husband's individual tax returns reflected combined income of $536,379.00 in 2015, $250,395.00 in 2016, and $188,934.00 in 2017. Husband also testified that while his 2014 income tax forms indicated an income of $926,425.00, this purported income was misleading because it included a deferred bonus, a year's pay, and a relocation package; [6] Husband submitted that his income from the years 2015 and 2016 were likewise artificially inflated. Husband's 2013 income was also high, at $632,691.00, which Husband testified was a product of the exchange rate between American dollars and pounds.

The trial court entered the final decree of divorce on July 5, 2018. The trial court applied the statutory factors found at Tennessee Code Annotated section 36-5-121, and determined that "Wife has a definite need for future alimony." Specifically, the trial court pointed out that Wife had not worked since 2004, and that Wife's ongoing mental health issues prevent her from working. In this regard, the trial court cited the testimony of Wife's doctor, who testified that Wife is bipolar and an alcoholic, and that Wife needs in-patient treatment. In contrast, the trial court pointed out that Husband has been successful in his consulting business and noted that in recent years, Husband has earned up to half a million dollars annually. Consequently, the trial court determined that the alimony factors favored Wife. As such, the trial court ruled that Wife was entitled to alimony in solido in the amount of $45,000.00, to be paid at the rate of $2,000.00 per month.[7] Further, the trial court found that Wife was entitled to alimony in futuro in the amount of $3,500.00 per month.

---

[5] Yet, Husband still claimed a $3,000.00 expense for housing to be deducted from his gross income.

[6] Husband later testified that his "2014 IRS, Form 1040" showed ordinary income of $452,285.00. Because none of the exhibits relied upon during Husband's testimony are included in the record, discussed *infra*, some of Husband's testimony is difficult to discern.

[7] A portion of this in solido award was designated, by the trial court, to go toward Wife's attorney fees.

Husband thereafter filed a motion to alter or amend the final decree of divorce, raising several arguments. First, Husband asserted that the trial court failed to make sufficient findings of fact and conclusions of law to support its ruling.[8] Husband also asserted that there was insufficient evidence to support the trial court's conclusion that Wife was entitled to $3,500.00 in alimony in futuro due to the exclusion of Wife's affidavit of income and expenses. Husband also argued that the alimony in futuro amount was in error due to Husband's inability to pay. Finally, Husband asserted that the trial court erred in awarding Wife alimony in solido to cover her attorney's fees, as such an award was prohibited by the parties' PMDA stating that Wife would not seek a lump sum award of attorney's fees.

In an order entered August 27, 2018, the trial court granted in part Husband's motion to alter or amend. In particular, the trial court reduced the alimony in solido award such that Husband would not have to pay any attorney fees in addition to what was already agreed to by the parties in the PMDA. Thus, Wife was awarded $30,000.00 in alimony in solido. The trial court, however, denied the motion to the extent of the remainder of Husband's arguments. Husband filed a notice of appeal with this Court on August 31, 2018.

### STANDARD OF REVIEW

This case was resolved by bench trial. Under Rule 13 of the Tennessee Rules of Appellate Procedure, the trial court's findings of fact from a bench trial are reviewed "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We give "great weight to a trial court's factual findings that rest on determinations of credibility." *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005) (citing *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997)). A trial court's conclusions of law, however, are not entitled to a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

### ANALYSIS

### Husband's Issues

Husband raises three issues in his brief concerning the alimony ordered in this case.[9] We must begin our analysis, however, by discussing the state of Husband's brief in

---

[8] In particular, Husband took issue with the fact that the trial court did not make a finding as to Wife's specific need or to what extent she suffers a deficit each month due to her expenses.

[9] Specifically, Husband's brief contains the following issues:

I. Whether the [t]rial [c]ourt erred in assessing [Husband] with in-solido alimony obligations as they relate to payment of Appellee's debts in contradiction with the parties['] Partial Marital Dissolution Agreement.

- 5 -

this matter. Pursuant to Rule 27 of the Tennessee Rules of Appellate Procedure, briefs of appellants to this Court must include, *inter alia,*

> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

> \* \* \*

> (7) An argument, which may be preceded by a summary of argument, setting forth:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues); . . . .

Failure to substantially comply with Rule 27 will result in waiver of the issues on appeal. *See, e.g.*, ***Reece v. Reece***, No. E2015-01610-COA-R3-CV, 2016 WL 4007847, at \*2 (Tenn. Ct. App. July 22, 2016) ("A party's failure to comply with the appellate brief requirements set forth in Tenn. R. App. P. 27 can have serious consequences" up to and including waiver of all issues on appeal.). The same is true of the failure to make appropriate references to the record or to cite to relevant authority. ***O'Shields v. City of Memphis***, 545 S.W.3d 436, 443 (Tenn. Ct. App. 2017) (citing ***Bean v. Bean***, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000)) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of an appellate brief as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure constitutes a waiver of the issue.").

Husband's appellate brief contains what he captions a table of authorities as required by Rule 27, but this purported table includes no actual legal authorities. Instead, the table includes only citations to the appellate record. Rule 27(a) makes clear that this table is for the purpose of citing legal authorities. *See* Tenn. R. App. P. 27(a) (stating that the table of authorities should include "cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited"). Indeed,

---

II. Whether the [t]rial [c]ourt erred in finding [W]ife's specific need of $3,500 per month and then erring in awarding alimony-in-futuro in the amount of $3,500 per month.

III. Whether the [t]rial [c]ourt erred in calculating [Husband's] ability to pay beyond what the parties had already agreed in their Partial Marital Dissolution Agreement.

Husband fails to cite a single legal authority in any fashion in his brief. The same is true of Husband's reply brief.[10]

Issues of alimony are not unusual issues for which no relevant authority may be found. Moreover, although this Court gives pro se litigants a certain amount of leeway in their filings, they are not excused from the substantive and procedural requirements applicable to lawyers. *See Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).[11] As such, Husband was required under Rule 27 and the relevant caselaw to support his arguments by citation to relevant authorities. "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her[.]" *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). Husband's failure to properly support his arguments results in a waiver of his issues on appeal. We therefore affirm the central findings of the trial court of which Husband disputes: that the parties' MDA does not preclude the award of $30,000.00 in alimony in solido as awarded by the trial court, that Wife is largely unable to maintain consistent employment and is in need of both alimony in solido and long-term alimony, and that the evidence was sufficient to show a need for and an ability to pay alimony in futuro of at least $3,500.00 per month, as well as $30,000.00 in alimony in solido.

### Wife's Issues

Wife next raises four issues, which are taken, and slightly restated from her appellate brief:

1. Whether the trial court erred in refusing to admit Wife's 14(C) affidavit of income and expenses into evidence.
2. Whether the trial court erred in awarding Wife an insufficient amount of alimony in futuro.
3. Whether the trial court erred in awarding Wife an insufficient amount of alimony in solido.

---

[10] Husband's statement of facts is largely deficient, as it contains only a recitation of the procedural history of the case, the terms of the PMDA, and the trial court's order. *See* Tenn. R. App. P. 27(a)(7) (requiring that appellants' briefs contain "[a] statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record"). Despite this deficiency, in his reply brief, Husband criticizes Wife's statement of facts, which includes a recitation of the facts supporting her position, as "not helpful" and "fail[ing] to identify those matters on which conflicting testimony was presented, instead of offering one party's testimony as factual matter." Husband's position, apparently, is that he need not offer any recitation of the testimony presented in his appellate brief, while Wife is required to offer a completely unslanted recitation of the facts that support both his arguments and hers. Husband had the opportunity to present the facts as he sought fit; he simply chose not to.

[11] Specifically, we have ruled that this leeway is generally reserved for those "untrained in the law." *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016) (citing *Hessmer*, 138 S.W.3d at 903). Husband is a law school graduate, although not a licensed lawyer. Moreover, given Husband's substantial income, he was within his means to hire counsel, but chose not to. He was represented by counsel in the trial court.

4.      Whether Husband should be required to pay Wife's attorney fees and expenses incurred by this appeal.

Wife's brief is fully compliant with Rule 27; as such, we will address the substantive merits of her arguments.

**I.**

Wife first asserts that the trial court erred in failing to admit Wife's affidavit of income and expenses into evidence.[12] A brief summary of the procedure relative to this issue is helpful. Prior to trial, Husband filed a motion to compel discovery responses from Wife. This action was then stayed to allow Wife to obtain mental health treatment around August 2017. The case resumed in December 2017 and Husband filed another motion to compel in March 2018, seeking sanctions. Although Wife did send some discovery thereafter, Husband alleged that it was deficient. The parties thereafter entered into a consent order providing that Wife would supplement her discovery by April 23, 2018. On April 25, 2018, Husband renewed his motion for sanctions, requesting, inter alia, that Wife be precluded from relying on any documents to support her need for alimony at trial that were not previously produced to Husband. By order of May 11, 2018, the trial court held Husband's motion in abeyance.

On the eve of trial, Wife sent Husband a multitude of additional financial documents, including an affidavit of income and expenses. At the beginning of trial, the issue of sanctions was not mentioned despite the trial court calling for all preliminary matters. Nevertheless, when Wife attempted to submit her affidavit of income and expenses as an exhibit at trial, Husband objected that the document should not be admitted because it was not timely produced. Wife testified that the reason she had difficulty obtaining the records to support her affidavit was due to the expense and the fact that Husband had cut off her internet access at her home. The trial court declined to rule on the admissibility of the document at that time and allowed Wife to testify regarding her expenses. Husband's counsel was also allowed to question Wife regarding her expenses. When Wife again attempted to move the document into evidence, the trial court ruled that it would not be admitted. Thus, while the document is a part of the record on appeal, it was not admitted as an exhibit at trial.

Wife argues that the trial court erred in excluding the affidavit where she offered a valid reason for the delay in producing records and much of the information contained therein was taken from Husband's own discovery responses, of which he clearly had access. We conclude, however, that the trial court did not abuse its discretion in excluding this document.

---

[12] It is unclear if this issue was rendered moot by the waiver of Husband's issues on appeal. Specifically, Wife states that this issue is "[r]aised in response to Husband's argument regarding Wife's need." In an abundance of caution, we have considered the issue notwithstanding the waiver of Husband's issues on appeal.

The Tennessee Supreme Court has recognized that exclusion of evidence is an appropriate response to discovery abuse. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) ("Excluding a witness's testimony may be an appropriate sanction for failure to supplement answers to interrogatories."). In evaluating a trial court's decision, the court has explained as follows:

> Although the Tennessee Rules of Civil Procedure do not provide a sanction for abuse of the discovery process, trial judges have the authority to take such action as is necessary to prevent discovery abuse. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988); *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981). Trial courts have wide discretion to determine the appropriate sanction to be imposed. *Strickland*, 618 S.W.2d at 501. Such a discretionary decision will be set aside on appeal only when "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). Appellate courts should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness. *White*, 21 S.W.3d at 223; *Overstreet*, 4 S.W.3d at 709.

*Mercer*, 134 S.W.3d at 133. To determine whether the exclusion of evidence was an appropriate sanction under the circumstances, courts should consider the following factors: "1) the party's reasons for not providing the challenged evidence during discovery; 2) the importance of the evidence; 3) the time needed for the other side to prepare to meet the evidence; and 4) the propriety of granting a continuance." *Id.* (citing *Lyle*, 746 S.W.2d at 699).

Although the trial court did not expressly consider the above factors, we must conclude that the trial court's decision was not an abuse of discretion. As an initial matter, it does not appear that either party sought a continuance. Importantly, because alimony was the sole remaining issue in this case, documents supporting Wife's claimed need for alimony were highly relevant to Husband's case. Due to the nature and volume of financial documents, Wife's decision to provide these necessary documents at the eleventh hour prevented Husband's counsel from properly evaluating the merits of Wife's claims. Moreover, although Wife testified that her home internet was disconnected,[13] it appears that Wife was able to obtain documents by using the internet at her counsel's office; the record does not reflect that Wife was prevented from utilizing this method of obtaining the documents prior to the eve of trial. Moreover, Wife's testimony was that she only attempted to obtain certain documents in the weeks before

---

[13] Husband, of course, denied that he had caused Wife's internet to become disconnected.

- 9 -

trial despite this case having been pending for years.[14] Thus, evaluating the trial court's decision in the light most favorable to it, we cannot conclude that the trial court abused its discretion

That is not to say, however, that by excluding Wife's affidavit of income and expenses, the trial court was left with no evidence to support Wife's claim of a need for alimony. Rather, as pointed out by Wife, Wife testified extensively regarding her need for alimony, including her anticipated monthly expenses. Other testimony also shows Wife's need, including testimony from Wife's psychiatrist, who testified as to Wife's outstanding balance from his treatment. From our review of the record, no motion to strike was ever lodged by Husband to strike any of the testimony and the trial court never ruled that Wife's testimony regarding her need should be stricken. *See generally **State v. Pilkey***, 776 S.W.2d 943, 953 (Tenn. 1989) (noting that a motion to strike "can serve to strike evidence which had previously been conditionally admitted when the condition has not later been met"). In light of the fact that no motion to strike was lodged and Husband's waiver of his affirmative issues on appeal, discussed *supra*, the testimony regarding Wife's expenses was a proper consideration in determining Wife's need for alimony. *See **Dillard v. Meharry Med. Coll.***, No. M2001-02038-COA-R3-CV, 2002 WL 1465957, at *4 (Tenn. Ct. App. July 9, 2002) (holding that the litigant waived its objection to the admission of certain evidence by delaying to make a motion to strike until the day following the testimony); **State v. Turner**, No. 03C01-9604-CC-00151, 1997 WL 379158, at *3 (Tenn. Crim. App. July 9, 1997) (holding that the defendant's failure to make a motion to strike an officer's testimony "constitutes waiver of this evidentiary issue").

## II.

Wife next asserts that the alimony award in this case was insufficient, as she needs additional alimony to meet her expenses and Husband has the ability to pay additional alimony based upon his true income. The standard of review applicable in alimony cases was thoroughly considered in the Tennessee Supreme Court's Opinion in **Gonsewski v. Gonsewski**, 350 S.W.3d 99 (Tenn. 2011):

[T]his Court [has] repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and,

---

[14] As an ancillary matter, we note that the record on appeal fails to include any of the twenty-two trial exhibits. Wife places the blame for this failure on Husband. While appellants do generally have the burden "to prepare a full and complete record for appellate review[,]" **State v. Banks**, 271 S.W.3d 90, 169 (Tenn. 2008), an appellee should endeavor to correct the appellant's designation of the record when it fails to include matters necessary for a full adjudication of the appeal. *See* Tenn. R. App. P. 24(a) ("If the appellee deems any other parts of the record to be necessary, the appellee shall, within 15 days after service of the description and declaration, file with the clerk of the trial court and serve on the appellant a designation of additional parts to be included. All parts of the record described or designated by the parties shall be included by the clerk of the trial court as the record on appeal.").

if so, the nature, amount, and duration of the award. *See, e.g.,* ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004); ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. ***Kinard v. Kinard***, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also* ***Burlew***, 40 S.W.3d at 470; ***Robertson v. Robertson***, 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." ***Kinard***, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." ***Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. ***Robertson***, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" ***Henderson***, 318 S.W.3d at 335 (quoting ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. ***Wright***, 337 S.W.3d at 176; ***Henderson***, 318 S.W.3d at 335.

***Gonsewski***, 350 S.W.3d at 105–06 (footnote omitted).

Currently, Tennessee law recognizes four types of spousal support: "(1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony." ***Gonsewski***, 350 S.W.3d at 107 (citing Tenn. Code Ann. § 36-5-121(d)(1)). The trial court awarded Wife $3,500.00 per month in alimony in futuro, coupled with $30,000.00 in alimony in solido. Alimony in futuro "is intended to provide support on a long-term basis until the death or remarriage of the recipient." ***Id.*** at 107 (citing Tenn. Code Ann. § 36-5-121(f)(1)). "This type of alimony can be awarded where 'the court finds that there is

- 11 -

relative economic disadvantage and that rehabilitation is not feasible.'" ***Id.*** (quoting Tenn. Code Ann. § 36-5-121(f)(1)). Alimony in solido is awarded "to adjust the distribution of the parties' marital property" and "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." ***Id.*** at 108 (citing ***Burlew*** 40 S.W.3d at 471); Tenn. Code Ann. § 36-5-121(d)(5)).

As previously discussed, due to Husband's waiver, we affirm the trial court's decision that Wife is entitled to both alimony in solido and alimony in futuro. The only question, then is whether Wife should have been awarded additional alimony in this case. In order to determine "the nature, amount, length, and manner of payment" of alimony, courts are directed to consider the factors contained in Tennessee Code Annotated section 36-5-121(i). ***Id.*** at 109. Included in these factors is the education of the parties, the duration of the marriage, the mental condition and age of the parties, the parties' relative earning capacities, the separate and marital property awarded to each party, and the standard of living during the marriage. Tenn. Code Ann. § 36-5-121(i). Of all the various factors, however, "'the two that are considered the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay.'" ***Gonsewski***, 350 S.W.3d at 110 (quoting ***Riggs v. Riggs***, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)).

Unfortunately, the trial court's order is deficient with regard to the two most important factors in evaluating Wife's alimony request—Wife's need and Husband's ability to pay. A review of the trial court's order on this issue is therefore necessary. Here, the trial court's order expressly considers the factors contained in section 36-5-121(i), including the mental and physical conditions of the parties, their assets, the duration of the marriage, the parties' relative fault, and the standard of living during the marriage. Although the trial court also considered the relative earning capacity of each party, the trial court did not make a specific finding as to Husband's income. Specifically, the trial court ruled that

> Husband is a college and law school graduate, though he has never engaged in the private practice of law. Husband is an international banking consultant. His current office is London, England. Though he testified that his income has gone down, he has been able to maintain a consistent income both in the United States and in the United Kingdom to as much as one-half million dollars a year.

In its summary of the testimony, the trial court also noted that the evidence showed that Husband "earned as little as $188,000.00 a year to as much as $926,245.00 (the latter figure is an aberration, since this figure represents almost 2 years of salary)" but that his income had decreased in recent years. Thus, the trial court notes three competing figures as to Husband's income: (1) $188,000.00 a year; (2) $926,245.00 a year; and (3) "as much as one-half million dollars a year." It is unclear what figure the trial court ultimately settled on to determine Husband's income for purposes of determining his

ability to pay alimony. Although we could assume that the trial court set Husband's income at approximately $500,000.00 for alimony purposes in order to soldier on with this appeal, we conclude that the trial court's lack of specific finding as to Husband's income is compounded by an additional issue: the trial court's failure to determine Wife's actual need.

The issue of need for purposes of alimony is generally determined by consideration of the party's reasonable expenses. *See Glinstra v. Lannin-Glinstra*, No. M2006-02113-COA-R3-CV, 2007 WL 2428083, at *5 (Tenn. Ct. App. Aug. 27, 2007) (directing the trial court on remand to "determine the parties' reasonable monthly expenses" in order to determine the need of one spouse and the ability to of the other spouse to pay alimony). As previously discussed, despite the exclusion of Wife's income and expense affidavit, Wife provided extensive testimony concerning her expenses. Although the trial court specifically found that Wife was in need of alimony, the trial court made no findings as to the specific amount of Wife's need or whether her claimed expenses were reasonable and necessary.[15]

Under Rule 52.01 of the Tennessee Rules of Civil Procedure, courts are required to make specific findings of facts and conclusions of law following bench trials. Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). This Court has applied Rule 52.01's requirements to alimony decisions on a number of occasions. *See, e.g.*, *Sibley v. Sibley*, No. M2015-01795-COA-R3-CV, 2017 WL 2297652, at *5 (Tenn. Ct. App. May 25, 2017) (applying Rule 52.01 to an alimony decision); *Cain-Swope v. Swope*, 523 S.W.3d 79, 85 (Tenn. Ct. App. 2016) (discussed in detail, *infra*); *Parrish v. Parrish*, No. W2013-00316-COA-R3-CV, 2013 WL 3203352, at *2 (Tenn. Ct. App. June 21, 2013) (discussing the need for specific findings under Rule 52.01 to explain an award of alimony); *Hudson v. Hudson*, No. 02A01-9412-CH-00282, 1996 WL 165293, at *4 (Tenn. Ct. App. Apr. 4, 1996) (remanding for appropriate findings regarding a spouse's ability to pay some or all of the other spouse's insurance costs as alimony); *cf. Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *8 (Tenn. Ct. App. Mar. 13, 2014) (remanding for specific findings concerning the trial court's reasons for denying a request for attorney's fees in a post-divorce action). Although there is no bright-line test for judging the sufficiency of a trial court's findings, "the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (quoting *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *11 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013))). When faced with an order that does not comply with Rule 52.01, this Court has indicated that we may either review the evidence de novo or vacate the judgment and remand to the

---

[15] Wife stipulated that Husband's expenses were reasonable and necessary.

- 13 -

trial court for the entry of an order compliant with Rule 52.01. *Id.* at 783 ("When the trial court fails to explain the factual basis for its decisions, we may conduct a de novo review of the record to determine where the preponderance of the evidence lies or remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly.").

Recently, courts faced with this question have chosen to vacate and remand to the trial court. *See, e.g.*, *Sibley*, 2017 WL 2297652, at *5 (vacating and remanding based on the trial court's failure to comply with Rule 52.01). One example is *Cain-Swope v. Swope*. *See* 523 S.W.3d at 99. In *Cain-Swope*, the trial court made extensive findings to support its decision to award Husband alimony in futuro. The trial court's findings with regard to the amount of alimony, however, were more sparse. Specifically, the trial court simply ruled that based on husband's need for alimony in futuro, the sum of $2,400.00 per month would be paid in two monthly installments. *Id.* We ruled, however, that "[s]imply stating the trial court's decision, without more, does not fulfill the requirements of Rule 52.01." *Id.* (citing *Gooding*, 477 S.W.3d at 782). As we explained,

> When a trial court fails to make sufficient findings of fact, we are unable to presume there is a factual basis for the underlying decision, which in this case is the decision that $2,400 is the appropriate amount of monthly alimony. *See Crabtree*, 16 S.W.3d at 360. Moreover, because the court did not state sufficient findings of fact and conclusions of law, we are deprived of one of the primary purposes of Rule 52.01, which is to facilitate appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *Lovlace*, 418 S.W.3d at 34. Simply put, the record before us fails to disclose how the trial court reached the conclusion that alimony in the amount of $2,400 per month was appropriate.

*Cain-Swope*, 523 S.W.3d at 99. In another case, we vacated the trial court's judgment when the final order "did not explain how or why [the trial court] reached its decision on the issues of alimony or attorney's fees." *Sibley*, 2017 WL 2297652, at *5. In particular, we noted that the trial court's failure to include "any discussion of Wife's need or Husband's ability to pay" the alimony prevented us from analyzing whether the trial court abused its discretion. *Id.*

The maxim holds true in this case. Here, the trial court's order contains no specific finding as to Husband's income.[16] Nor does the order include any findings as to Wife's reasonable expenses. Both Wife's need and Husband's ability to pay were highly disputed at trial and voluminous testimony was submitted as to each issue. Without some indication of how the trial court chose to award Wife $3,500.00 in alimony in futuro and

---

[16] Our difficulty in reviewing this issue is compounded by the fact that the exhibits relied upon in Husband's testimony of his income are not included in the record.

- 14 -

$30,000.00 of alimony in solido, we are left to wonder how the trial court's reached its ultimate decision. *See Gooding*, 477 S.W.3d at 778 ("When the trial court does not find the facts specially or state separately its conclusions of law, we are left to wonder as to" what the trial court relied on in making its decision.). Accordingly, we vacate the trial court's order as it pertains to the amount of alimony in futuro and alimony in solido awarded and remand for entry of an order fully compliant with Rule 52.01. All other issues concerning the award of alimony raised by Wife are pretermitted.

### III.

Finally, Wife seeks an award of attorney's fees and expenses incurred on appeal pursuant to Tennessee statute and caselaw.[17] This Court has previously held that an award of attorney's fees is inappropriate where the trial court's failure to make specific findings regarding need and ability to pay alimony cause the trial court's alimony award to be vacated. *See Sibley*, 2017 WL 2297652, at *5 ("Considering the lack of factual findings in the trial court, we must decline to award Wife her attorney's fees incurred on appeal."). We noted, however, that our ruling did not preclude the party from seeking attorney's fees in a future proceeding. *Id.* at *5 n.2. We likewise decline to award Wife attorney's fees at this time.

### CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed in part and vacated in part. This case is remanded to the trial court for further proceedings in accordance with this Opinion; specifically, this trial court is directed to enter an order containing specific findings of fact and conclusions of law sufficient to determine whether Wife was awarded sufficient alimony.[18] Costs of this appeal are taxed to the Appellant, Patrick Masserano, and his surety.

_____

J. STEVEN STAFFORD, JUDGE

---

[17] Although the parties' PMDA contains an attorney fee clause related to breaches of that agreement, there is no allegation that it was triggered in this case.

[18] As previously discussed, the trial court's finding that Wife was entitled to, and Husband had the ability to pay, at least $3,500.00 in alimony in futuro and $30,000.00 in alimony in solido is affirmed and should not be reconsidered on remand.